## A92A0326. THE STATE v. WRIGHT et al.
(419 SE2d 334)

CARLEY, Presiding Judge.

Appellees Wright and Brown were jointly indicted for trafficking in cocaine. Brown was also indicted for possession of a firearm by a convicted felon. The trial court granted pre-trial motions to suppress and the State appeals.

1. Brown's motion to dismiss the State's appeal is denied.

2. On March 27, 1990, a federal warrant was issued in Pennsylvania for the arrest of Wright on a charge of unlawful flight to avoid prosecution for drug offenses. On July 22, 1990, Wright was arrested on an unrelated charge in DeKalb County. As the result of this arrest, it was learned that Wright was residing in an apartment in Clayton County. Although Wright had been released before it was determined that he was a wanted fugitive, the information as to his address was provided to the F.B.I. On July 26, 1990, F.B.I. agents entered Wright's apartment in an attempt to execute the federal arrest warrant. The trial court found that the DeKalb County arrest was illegal and that any evidence seized from Wright's apartment by the F.B.I. agents should be suppressed as the "fruit of the poisonous tree."

Evidence is suppressible if it was seized in a search that was authorized only by information that was illegally obtained. However, the search in the instant case was not conducted pursuant to a *search* warrant that had been issued *subsequent* to and in reliance upon any information derived from the DeKalb County arrest. Wright's apartment was entered pursuant to a federal *arrest* warrant that had been issued *prior* to and without reliance upon any information derived from the DeKalb County arrest. Unlike a search warrant, the federal arrest warrant was not directed toward the seizure of tangible evidence from a specified location. The federal arrest warrant authorized the seizure of the person of Wright wherever he might be located. As it happens, the F.B.I. agents learned that Wright, having fled Pennsylvania, was in Georgia and residing in a specific apartment in Clayton County. Thus, the information derived from the DeKalb County arrest was relevant only to the *location* of the subsequent execution of the federal arrest warrant, not to the original issuance of that warrant itself. Armed with the information from DeKalb County, the F.B.I. agents could have conducted a stakeout of Wright's apartment and arrested him when he exited or before he entered. However, the agents were not precluded from entering Wright's apartment. "[A]n arrest warrant alone will suffice to enter a suspect's own residence to effect his arrest." *Steagald v. United States*, 451 U. S. 204, 221 (101 SC 1642, 68 LE2d 38) (1981).

Accordingly, the legality of Wright's DeKalb County arrest is irrelevant in the instant case. Regardless of *how* the information re-

garding the whereabouts of Wright was obtained, any evidence found in the search of Wright's apartment cannot be considered as solely the "fruit" thereof. The evidence found in the search of Wright's apartment was solely the "fruit" of the previously issued federal arrest warrant. The "fruit of the poisonous tree" "doctrine is limited to evidence which the police cannot trace to an independent and lawful source. [Cits.]" *Morrison v. State,* 129 Ga. App. 558 (1) (200 SE2d 286) (1973). The initial authority to enter the apartment to conduct a search for Wright was in no way dependent upon information regarding the mere location thereof, but was wholly dependent upon the pre-existing federal warrant as an entirely independent and lawful source of authority for that search. Compare *Clare v. State,* 135 Ga. App. 281, 285 (5) (217 SE2d 638) (1975).

As long as the federal arrest warrant was issued on probable cause and was itself "untainted," the F.B.I. agents could use the information derived from the DeKalb County arrest and thereafter execute the warrant in Wright's Clayton County apartment if they had reason to believe that Wright was inside. "[F]or Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton v. New York,* 445 U. S. 573, 603 (100 SC 1371, 63 LE2d 639) (1980). There is no contention that the federal arrest warrant was not valid and the undisputed evidence of record shows that the F.B.I. agents had reason to believe that Wright was in his apartment when they entered. Accordingly, the original entry into the apartment pursuant to the federal arrest warrant was authorized.

3. Upon entering the apartment, the F.B.I. agents almost immediately discovered Brown and a gun. The seizure of Brown and the gun was authorized pending his identification and, if he proved not to be the wanted fugitive, pending a further search of the apartment for Wright. *State v. Scott,* 176 Ga. App. 887, 889 (2) (339 SE2d 276) (1985).

4. Having determined that Brown was probably not the fugitive, the F.B.I. agents were obviously authorized to conduct a thorough search of the premises to determine whether Wright was there, since it was the seizure of the person of Wright that was authorized by the federal arrest warrant. "Possessing an arrest warrant and probable cause to believe [Wright] was in his home, the officers were entitled to enter and to search anywhere in the [apartment] in which [Wright] might be found. [Until] he was found, . . . the search for him was [not] over, and there was [still] that particular justification for entering any [place] that had not yet been searched." *Maryland v. Buie,* 494 U. S. 325, 332-333 (III) (110 SC 1093, 108 LE2d 276) (1990).

After a search of the apartment itself, Wright had yet to be

found. However, an F.B.I. agent then observed a "hatch" which ostensibly provided access to an attic area above the apartment. Using a stool to stand on, the agent pushed the hatch aside and shined a light into the attic. The trial court concluded that, by so doing, the agent exceeded his authority and "entered a part of the apartment which was not normally accessible to [him] or anyone else."

This is clearly erroneous. The proper inquiry must be whether it was reasonable to believe that the hatch could lead to a part of the apartment which might normally be considered accessible by a *fugitive* who was seeking to avoid his arrest for having already fled another jurisdiction to avoid prosecution. Obviously, it is not unreasonable to believe that such a fugitive might "normally" consider an attic to be an accessible part of his residence. It was necessary for the agent to use a stool to reach the closed hatch. However, there is nothing to indicate that it was not reasonable for the agent to suspect that Wright may have been able to use a rope ladder or to have availed himself of some other means of access which were otherwise undetectable. Having discovered the hatch, the agent would have been remiss in his duties had he *not* checked to determine what was on the other side before he abandoned his search for Wright. As previously noted, the agent was "entitled to enter and to search *anywhere* in the [apartment] in which [Wright] *might* be found." (Emphasis supplied.) *Maryland v. Buie,* supra at 333 (III). Wright "claims that it was unreasonable for the officers to look inside [the attic] . . . when they were armed with an arrest warrant that gave them only the limited authority to search for [Wright] himself. Of course, [Wright] could hide in [an attic], therefore it was reasonable to look for him there." *United States v. Beck,* 729 F2d 1329, 1332 (4) (11th Cir. 1984).

5. As the agent stood on the stool, his view was obstructed by several paper and plastic bags which were on the floor of the attic at his eye level. In order for him to obtain a clear view of the attic and to prepare for his possible confrontation with an armed fugitive, the agent quickly grabbed the bags and threw them to the floor. An unobstructed view of the attic revealed to the agent that Wright was not present there. When he began to return the bags to the attic, however, the agent saw that one of them contained, in plain view, glassine envelopes of what appeared to be cocaine. This cocaine was seized.

The suspected cocaine did not come into the agent's plain view until *after* he had moved the bags. It is undisputed, however, that the agent did not move the bags in order to search them, but merely to facilitate his search for Wright. Thus, the agent's act of moving the bags did not constitute a "search" of the premises which was separate and apart from the search for Wright that had been the lawful objective of the agent's entry into the apartment. "Merely inspecting those

[items] that came into view during the . . . search [for Wright] would not have constituted an independent search, because it would have produced no additional invasion of [Wright's] privacy interest. [Cit.]" *Arizona v. Hicks,* 480 U. S. 321, 325 (II) (107 SC 1149, 94 LE2d 347) (1987). By taking action directly related to the objectives of the authorized intrusion to search for Wright, the agent may have exposed to view concealed portions of the apartment and its contents, but this action did not produce a new invasion of Wright's privacy which was unjustified by the exigent circumstance of executing the federal arrest warrant that had validated the entry. Compare *Arizona v. Hicks,* supra at 325 (II). Accordingly, the cocaine was properly seized under the "plain view" doctrine. "Once the officers looked in the [attic] the [cocaine] came within their view and therefore [was] seized properly." *United States v. Beck,* supra at 1332 (4).

6. After the cocaine had been seized, the F.B.I. agents used that discovery to secure a warrant to search the apartment for additional evidence of drug activity. The subsequent search conducted pursuant to this warrant did result in the discovery of additional evidence. However, the trial court suppressed this additional evidence, concluding that the search pursuant to which it had been discovered was "tainted" because the warrant had been issued on the basis of the cocaine found during the purportedly "illegal search" of the attic.

This conclusion is clearly erroneous. As discussed in Divisions 4 and 5, there was no "illegal search" of the attic. There was a legal search of the attic for Wright, which search resulted in the discovery, in plain view, of cocaine. That lawfully seized cocaine furnished ample probable cause for the issuance of a warrant to search the apartment for additional evidence of drug activity.

7. The State filed notice of its intent to introduce, as similar offenses, evidence of Wright's commission in Pennsylvania of those drug offenses which had led to his fugitive status. Wright responded by making a motion to suppress which was, in effect, a motion in limine to exclude this evidence on the ground that the drugs had been illegally seized by the Pennsylvania authorities. The trial court, after conducting a hearing, granted this motion, finding that the drugs had been illegally seized in Pennsylvania.

The State does not seek to try Wright for the Pennsylvania offenses or to introduce as tangible evidence in the instant Georgia criminal proceeding the actual drugs that were seized in Pennsylvania. The State seeks only to introduce evidence of Wright's commission of similar drug offenses in Pennsylvania. " '(B)efore evidence of independent crimes is admissible two conditions must be satisfied. First, there must be evidence that the defendant was in fact the perpetrator of the independent crime. Second, there must be sufficient similarity or connection between the independent crime and the of-

fense charged, that proof of the former tends to prove the latter. [Cit.]' " *State v. Johnson,* 246 Ga. 654, 655 (1) (272 SE2d 321) (1980). The purported illegality of the seizure of the drugs in Pennsylvania would have no bearing on Wright's identity as the perpetrator of an offense in that jurisdiction and would not serve to demonstrate any dissimilarity between that offense and his commission of a drug crime in Georgia. The exclusionary rule is neither relevant to guilt or innocence, nor does it bar a prosecution. However, the State does not urge that the asserted illegality of the Pennsylvania seizure of drugs is an irrelevant inquiry in the determination of the admissibility of the other crimes evidence, but urges only that the trial court erred in granting Wright's motion on the merits. Accordingly, for purposes of this appeal, we will assume, without deciding, that the exclusionary rule is not limited to the suppression of tangible evidence to prove guilt, but is broad enough to mandate the suppression in Georgia of mere evidence of purported similar offenses committed and otherwise prosecutable elsewhere.

The relevant facts are as follows: Officers originally entered Wright's two apartments in Pennsylvania without a search or arrest warrant. The State urges that these warrantless entries were authorized so as to prevent the destruction of evidence of Wright's drug activity pending issuance of a search warrant. However, no evidence of exigent circumstances sufficient to authorize the immediate warrantless entries was introduced. Compare *Anderson v. State,* 193 Ga. App. 6, 7 (2) (387 SE2d 148) (1989). The State further urges that, even if the initial entries were illegal, it was only after the issuance of the search warrants on sufficient probable cause that Wright's apartments were actually searched and the drugs seized. See *Mack v. State,* 189 Ga. App. 261, 263 (1) (375 SE2d 458) (1988). However, admissible copies of the Pennsylvania search warrants were never introduced into evidence. Absent any admissible evidence of valid search warrants, the seizure of drugs from Wright's apartments cannot be upheld under the "independent source" doctrine. Compare *Murray v. United States,* 487 U. S. 533 (108 SC 2529, 101 LE2d 472) (1988).

The State having failed to produce any evidence that the drugs were seized in Pennsylvania pursuant to a valid search warrant or pursuant to any exception to the warrant requirement, it follows that the trial court did not err in granting Wright's motion in limine.

8. The trial court's grant of Wright's and Brown's motions to suppress evidence discovered during the search of Wright's apartment is reversed. The trial court's grant of Wright's motion in limine as to the inadmissibility of the evidence of the similar offenses occurring in Pennsylvania, is affirmed.

*Judgments affirmed in part and reversed in part. Pope and Johnson, JJ., concur.*

DECIDED MAY 19, 1992 —
RECONSIDERATION DENIED JUNE 1, 1992 — 

*Robert E. Keller, District Attorney, Gregory K. Hecht, Assistant District Attorney,* for appellant.
*John A. Nuckolls, Lillian L. Neal,* for appellee.