A00A0297. DOWNEY v. THE STATE.
(527 SE2d 909)

ELDRIDGE, Judge.

Following a bench trial in the Superior Court of Cobb County where the relevant facts were stipulated, Jeffrey Glenn Downey was found guilty on four counts of burglary.[1] On appeal, Downey claims error in the trial court's denial of his motion to suppress the results of

---

[1] An additional four counts were nol prossed.

a search of his residence. Finding no error, we affirm.

Downey lived with his mother in Cobb County. He was wanted for burglary in Cherokee County, and a fugitive warrant was issued. Lieutenants Sampson and Simmons from the Cobb County Police Department went to Downey's residence to arrest him on the fugitive warrant. Downey's car was in the driveway. His mother answered the officers' knock. Claiming Downey was not at home, she consented to a search of the residence pursuant to the execution of the arrest warrant.

The officers searched the residence for Downey. During the course of the search, several rifles were discovered in the bedroom, where they were "cleared" for the officers' safety.[2] The officers testified at the motion hearing that the process of clearing weapons found during the execution of an arrest warrant is standard procedure, because

> if you've got a felony warrant on someone and you're looking for him, you don't want to leave a weapon that they can use against you. So immediately you would seize the weapon and put it someplace else secure so if there was a confrontation or a struggle that weapon couldn't be used against you.

This is true especially when "we're looking for an individual and have not completely cleared the house — we're looking for an individual that may or may not be armed — we always assume that officer safety being priority — the first thing I'm going to do with any weapon is make it safe."

Lieutenant Simmons searched the attic of the house. A styrofoam gun box was found at the top of the attic's pull-down stairs, immediately to the right of Simmons' head as he reached the top. Simmons could see the stock of a rifle in the partially opened box. The gun box contained a Norinco Mak 90 assault rifle. Before continuing his search of the attic, Simmons handed the gun box down the attic stairs to Sampson. Sampson cleared the weapon, as he had the other weapons. The Norinco's serial number was located in obvious positions on both sides of the gun barrel and "jumped" out at Sampson as he cleared the assault rifle: 1-2-1-69. The day before Sampson had investigated a burglary at a local pawnshop where a Norinco Mak 90 assault rifle, serial number 1-2-1-69, was taken. Lieutenant Sampson immediately remembered the serial number because "[t]he latter part of the serial number is the police code for a weapon, sixty-nine, and it just kind of stuck in my mind when I was

---

[2] To "clear" a weapon is to make it safe and involves ascertaining whether the weapon is loaded, unloading it if applicable, and placing the safety in the "on" position.

given that number by the [pawnshop] owner, 1-2-1 sixty-nine."

After clearing the weapon, Sampson left it in the house while he went to his patrol car to check the notes he made on the pawnshop burglary and verify his memory of the serial number. Thereafter, the Norinco assault rifle was seized. The stolen weapon formed the basis for obtaining a search warrant for Downey's residence. During the execution of the search warrant, other items were found and seized. These items provided proof of Downey's participation in the four burglaries which are the subject of this appeal. *Held*:

Downey contends that the trial court erred in denying his motion to suppress the Norinco assault rifle. His specific claim of error is that:

> the act of Officer Sampson of opening the closed three (3) foot styrofoam box and removing the gun from the box, which allowed him to observe the serial number and thus recognize the gun as contraband, was an illegal search, beyond the scope of the authority and consent to search the premises for the Appellant's person, conducted without a search warrant.

When reviewing the decision of the trial court on a motion to suppress, the evidence is construed most favorably to uphold the court's findings and judgment. *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994). If there is any evidence to support the trial court's findings on disputed facts and credibility, they will not be disturbed unless clearly erroneous. Id.

(a) Downey's claim of error concedes that after removing the Norinco from the gun box, the weapon's serial number was in plain view and that Sampson's immediate recognition of that serial number was based on knowledge he had gained from the prior pawnshop burglary. We find Downey's concessions appropriate since the evidence shows: (1) the observation of the Norinco's serial number was an inevitable part of "clearing" that weapon and (2) Sampson had a legitimate, independent basis for immediately recognizing the Norinco's serial number.

(b) Contrary to Downey's claim of error, the evidence was that the gun box was open and Simmons could plainly see the stock of the Norinco. In fact, the evidence was that the Norinco's styrofoam gun box, which "folded together like a sandwich," would not stay closed and had to be taped together in the police evidence room to keep it shut. After discovering the Norinco, it was then "cleared" by the officers, just like the other weapons that were found in Downey's house during the attempted execution of the arrest warrant.

(c) The evidence also showed that the Norinco was discovered in

a place Lieutenant Simmons had a right to be during the search of the residence for Downey's "person." Since Downey "could hide in an attic, . . . it was reasonable to look for him there." (Citation and punctuation omitted.) *State v. Wright*, 204 Ga. App. 382, 384 (419 SE2d 334) (1992). The gun box and the stock of the Norinco were in plain view at the top of the attic's pull-down stairs. There was no general exploratory search in this case.

(d) So, Simmons and Sampson discovered the Norinco assault rifle — along with several other weapons — during the legitimate execution of Downey's arrest warrant. In the process of "clearing," i.e., making safe, each of the weapons found, Sampson's immediate recognition of the Norinco's plainly visible serial number provided a sufficient basis for its seizure. Thus, the only issue here is whether Simmons and Sampson had a right to "clear" the weapons that were discovered in areas the officers had a right to be during the attempted execution of Downey's arrest warrant. We hold that they had that right.

Once lawfully inside Downey's house to execute the fugitive warrant, the officers were authorized to make a search of the entire house for the limited purpose of securing it, i.e., discovering the presence of all occupants and eliminating the possibility of harm to the officers. *Williams v. State*, 236 Ga. App. 102, 105 (2) (511 SE2d 216) (1999); see also *State v. Wright*, supra at 383 (3); *State v. Scott*, 176 Ga. App. 887, 889 (2) (339 SE2d 276) (1985); *Lentile v. State*, 136 Ga. App. 611, 613 (222 SE2d 86) (1975). Further, Downey's car was in the driveway, making it reasonable to assume that he was hiding in the house despite his mother's protest to the contrary. With the reasonable possibility that a fugitive was present in the home, the officers were entitled to make safe any weapon discovered during their legitimate execution of Downey's arrest warrant "to eliminate the possibility that it could be used against them." *Latimer v. State*, 204 Ga. App. 639, 641 (1) (420 SE2d 91) (1992); *Dennis v. State*, 166 Ga. App. 715, 717 (305 SE2d 443) (1983).

The trial court did not err in denying Downey's motion to suppress.

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED JANUARY 13, 2000 — 

*Joanne E. Elsey*, for appellant.

*Patrick H. Head, District Attorney, Charles M. Norman, Debra H. Bernes, Maria B. Golick, Assistant District Attorneys*, for appellee.