**THIRD DIVISION**
**ELLINGTON, P. J.,**
**BETHEL, J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**May 1, 2018**

# In the Court of Appeals of Georgia

A18A0334. FRANCIS v. THE STATE.

PHIPPS, Senior Appellate Court Judge.

After a jury trial, Adrian Francis was convicted of possession of cocaine and marijuana. On appeal, Francis argues that the trial court erred when it denied his motion to suppress the drugs found during his arrest and that the evidence was insufficient even if the motion was properly denied. We disagree and affirm.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence." *Reese v. State*, 270 Ga. App. 522, 523 (607 SE2d 165) (2004) (citation omitted). We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether, after viewing the evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the

crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

Thus viewed in favor of the verdict and the judgment, the record of the hearing on the motion and the subsequent trial shows that at approximately 8:45 p.m. on the evening of April 29, 2013, a deputy with the Gwinnett County Sheriff's Department and her partner went to a house on Buttercup Trail to execute an arrest warrant for a person thought to be at that address. The deputy had been to the house three times before to execute arrest warrants for "other people," and her division typically handled only felonies and violent misdemeanors such as battery. The homeowner admitted the two officers through the front door and into his living room and told them that the person identified in the warrant was "no longer there." While her partner searched the house to confirm this fact, the deputy remained in the living room, where Francis also was.[1] While the partner's search continued, the deputy obtained Francis's identification information and checked for any "open warrants on him." When the deputy was told that a bench warrant was out for Francis's arrest (for

---

[1] Although Francis's brief claims that the deputy blocked him from leaving the house, his testimony to this effect was given at the hearing on his motion for new trial, not at or before trial. Neither Francis nor any other person testified on his behalf at the hearing on his motion to suppress or at trial.

2

failure to appear on a traffic charge), she waited for her partner to return to the living room before handcuffing or arresting Francis because she needed her partner for "backup . . . in case there were any issues" with getting Francis into custody. Between the deputy's entrance into the house and her learning of the existence of a bench warrant for Francis's arrest, less than 15 minutes passed.

When the deputy's partner returned to the living room, and after a brief struggle during which Francis attempted to reach into his pants and told another person sitting on the living room couch to "come get this," the officers handcuffed Francis. A patdown in the living room for the purpose of detecting weapons included a search of Francis's pockets and produced two pills later identified as Trazodone, for which Francis had a prescription. A more thorough search outside near the officers' patrol car yielded a small baggy containing what was later determined to be less than one gram crack cocaine and less than one gram of marijuana. The cocaine and marijuana were found within 40 minutes of the officers' entry into the house.

Francis was accused of possession of cocaine and possession of less than an ounce of marijuana. After a pretrial hearing at which the deputy was the only witness, the trial court found that the drugs were legally seized incident to Francis's arrest and denied his motion to suppress. After a jury found Francis guilty on both charges, he

was convicted and sentenced to 15 years with two to serve. His motion for new trial was denied.

1. Francis first asserts that the trial court erred when it denied his motion to suppress the cocaine and marijuana found during his arrest. We disagree.

The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. "As its text indicates, the ultimate touchstone of the Fourth Amendment is reasonableness." *Brown v. State*, 293 Ga. 787, 791 (2) (a) (750 SE2d 148) (2013) (citation and punctuation omitted). The Supreme Court of Georgia has identified "three fundamental principles which must be followed when conducting appellate review" of a ruling on a motion to suppress evidence alleged to have been seized in violation of the Fourth Amendment:

> First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support [them]. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.

*Miller v. State*, 288 Ga. 286, 286 (702 SE2d 888) (2010) (citation and punctuation omitted). In reviewing a trial court's decision on a motion to suppress, we consider "all relevant evidence of record, including evidence introduced at trial, as well as evidence introduced at the motion to suppress hearing." *Pittman v. State*, 286 Ga. App. 415, 416 (650 SE2d 302) (2007) (footnote and punctuation omitted).

The transcript of the hearing on Francis's motion to suppress shows that he conceded the legality of the search of his person once he had been arrested in the living room pursuant to the outstanding bench warrant. The only issue raised at the hearing, and on appeal, was whether Francis was illegally detained between the time that the officers first entered the house and the time of his arrest such that the evidence found incident to that arrest should have been suppressed.

As a preliminary matter, we note that these officers encountered Francis in the living room of the house and address as to which they had secured a warrant to arrest another person, and Francis has raised no objection on appeal as to the legality of that arrest warrant.[2] "'For Fourth Amendment purposes, an arrest warrant founded on

[2] We note in passing that "the Fourth Amendment does not by its terms require that probable cause be shown by the affidavit [filed in support of obtaining an arrest warrant], but [only] that the judicial officer be supplied with sufficient information to support his independent judgment that probable cause exists for the warrant." *Devier v. State*, 253 Ga. 604, 610 (5) (323 SE2d 150) (1984) (citation and

probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within.'" *State v. Wright*, 204 Ga. App. 382, 383 (2) (419 SE2d 334) (1992), quoting *Payton v. New York*, 445 U.S. 573, 603 (100 SCt 1371, 63 LE2d 639) (1980). Having shown probable cause for the issuance of an arrest warrant at this specific location, "the officers were entitled to enter and to search anywhere in the [house]" in which the subject of that warrant "might be found." *Wright*, 204 Ga. App. at 384 (4) (citation and punctuation omitted). This is so notwithstanding the homeowner's representation that the subject of the arrest warrant was not present. See *Rodriguez v. State*, 295 Ga. 362, 370 (2) (b) (761 SE2d 19) (2014) (an officer "was not absolutely required to instantly and unconditionally accept the truth" of information obtained from persons detained "without verification and to ask nothing more").

Further, the officers having encountered Francis "almost immediately" on entering the house, his seizure "was authorized pending his identification and, if he proved not to be the wanted fugitive, pending a further search of the house" for the subject of the arrest warrant. *Wright*, 204 Ga. App. at 383 (3) (citation omitted). "'Until [that person] was found, the search for him was not yet over, and there was

punctuation omitted).

still that particular justification for entering any place that had not yet been searched.'" Id. at 383 (4), quoting *Maryland v. Buie*, 494 U.S. 325, 332-333 (III) (110 SCt 1093, 108 LE2d 276) (1990). Finally, the deputy's decision, made for her own safety, to wait for some minutes for her partner to complete his search of the house before attempting to arrest Francis did not unreasonably delay Francis's detention. See *Carter v. State*, 297 Ga. App. 608, 610 (1) (677 SE2d 792) (2009) (officer having reasonable suspicion as to the subject of a traffic stop was justified in detaining defendant "with his hands on the hood of the patrol car until backup arrived," at which time defendant was arrested and a search of material discarded by defendant was completed).

Construed in favor of the trial court's judgment, the evidence thus shows that being in possession of a valid arrest warrant for the house in question, these officers legally entered the house, found Francis in the living room, detained him for a short time during the period of a further search of the house for the subject of the arrest warrant, and arrested him after determining that he was the subject of an outstanding bench warrant. Because no portion of Francis's detention under these circumstances was unreasonable, the trial court did not err when it denied his motion to suppress the evidence found in the wake of his arrest.

7

2. Francis also asserts that the evidence seized in the course of his arrest was insufficient to support his conviction because only one officer testified that she saw a baggy fall from the leg of his pants and because the respective amounts of the two drugs recovered were small.

With exceptions not applicable here, however, "[t[he testimony of a single witness is generally sufficient to establish a fact." OCGA § 24-14-8. The record also shows that trace amounts of both marijuana and cocaine were found in Francis's possession, and neither statute criminalizing possession of these substances requires more. See OCGA § 16-13-30 (c) (1) (defining the felony offense of possession of "less than one gram of a solid substance" of a controlled substance, including cocaine), 16-13-30 (j) (1) (defining the offense of possession of marijuana, without specifying any lower limit as to amount), 16-13-2 (b) (providing that possession of "one ounce or less" of marijuana is a misdemeanor). The evidence was thus sufficient to sustain Francis's conviction. See *Johnson v. State*, 296 Ga. App. 697, 698 (1) (675 SE2d 588) (2009) (affirming sufficiency of evidence for possession of marijuana); *Jackson*, supra.

*Judgment affirmed. Ellington, P. J., and Bethel, J., concur.*