FREDERICK PAYNE v. CARL ROBINSON, WARDEN
(13177)

PETERS, C. J., HEALEY, CALLAHAN, GLASS and COVELLO, Js.

Argued April 6—decision released May 24, 1988

*John F. Kavanewsky, Jr.,* with whom, on the brief, was *James V. Guarino,* for the appellant (petitioner).

*Leah Hawley,* deputy assistant state's attorney, with whom, on the brief, were *Robert O'Brien* and *James G. Clark,* assistant state's attorneys, for the appellee (respondent).

PETERS, C. J. We granted certification of the petitioner's appeal from the Appellate Court to consider the following issue: Under what circumstances, if any,

does the exclusionary rule of the fourth amendment apply to probation revocation hearings? The petitioner, Frederick Payne, sought a writ of habeas corpus, alleging that the revocation of his probation violated due process. After the trial court's denial of his petition, the petitioner appealed to the Appellate Court, which upheld the trial court's decision. *Payne* v. *Robinson,* 10 Conn. App. 395, 523 A.2d 917 (1987).

The record discloses the following facts: On January 27, 1982, the petitioner was on probation. Early that morning, police officer Joseph Greene received information from a complainant that the petitioner had threatened him with a gun. Shortly thereafter, Greene stopped the petitioner in his automobile. After requesting that the petitioner get out of the car and frisking him, Greene conducted a search of the car and found a small loaded revolver under the driver's seat. The police subsequently arrested the petitioner on charges of threatening in violation of General Statutes § 53a-62, and carrying a dangerous weapon in a motor vehicle in violation of General Statutes § 29-38.

While these charges were pending, the state charged the petitioner with violating the conditions of his probation pursuant to General Statutes § 53a-32. During the subsequent probation revocation hearing, the petitioner did not question, either by a motion to suppress or by an objection, the admission of the gun into evidence. The trial court, *McKeever, J.,* found that the petitioner had been arrested while having in his possession a loaded revolver for which he did not have a permit. The petitioner had thereby violated that condition of his probation that required him to obey the laws of the state. The trial court consequently granted the state's request to revoke the petitioner's probation.

The petitioner thereafter sought a writ of habeas corpus challenging the trial court's revocation of his

probation on several grounds, including its failure to suppress the gun. The habeas court, *Corrigan, J.,* denied the petition, holding that even if the petitioner had made a timely suppression motion at the revocation hearing, the warrantless search of the car had been reasonable under the circumstances, because the police had had probable cause to believe that the car contained evidence pertaining to a crime. See *State* v. *Reddick,* 189 Conn. 461, 467, 456 A.2d 1191 (1983). On appeal, the Appellate Court affirmed the judgment of the trial court on a different ground, concluding that the exclusionary rule of the fourth amendment did not apply to the probation revocation proceedings at issue. *Payne* v. *Robinson,* supra, 400. We granted certification to consider the issue of the applicability of the exclusionary rule to probation revocation proceedings. We now affirm the judgment of the Appellate Court.

I

Prior to turning to the merits, we must determine whether the petitioner's claim is properly before us. Two circumstances potentially impede our review: the petitioner's failure directly to appeal the revocation of his probation; see *State* v. *Roberson,* 165 Conn. 73, 81–82, 327 A.2d 556 (1973); and his failure timely to move for suppression of the gun or to object to its admission.

We have often reiterated that habeas corpus may not be used as an alternative to a direct appeal. See, e.g., *Galland* v. *Bronson,* 204 Conn. 330, 333, 527 A.2d 1192 (1987); *Cajigas* v. *Warden,* 179 Conn. 78, 81, 425 A.2d 571 (1979). In order to obtain review of a constitutional claim in a collateral proceeding, therefore, a petitioner must first allege and prove by a preponderance of the evidence that he did not deliberately bypass the orderly process of direct appeal. *Galland* v. *Bronson,* supra. Here the petitioner alleged that he had not deliberately

bypassed a direct appeal. During the hearing, he testified that his attorney had informed him that he would file an appeal but that none was ever filed. In its memorandum of decision the trial court simply stated that "[t]he respondent does not contest that the record before this court does not show a deliberate bypass." On this basis, we conclude that the petitioner sustained his burden of proving that he did not deliberately bypass a direct appeal.[1]

We turn next to the petitioner's failure at the revocation proceeding either to move to suppress the gun or to object to its admission.[2] On direct appeal, we will review claims that were not properly preserved at trial when they facially implicate fundamental constitutional rights and are adequately supported by the record. *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973). We perceive no reason why the same rule should not apply to constitutional claims raised for the first time in a collateral proceeding so long as they are not barred by the petitioner's deliberate bypass of a direct appeal.

---

[1] Alternatively, we may construe this record to demonstrate that the state effectively waived any claim that the petitioner deliberately bypassed a direct appeal. While we have often characterized the question of deliberate bypass as "jurisdictional"; e.g., *Galland* v. *Bronson,* 204 Conn. 330, 336, 527 A.2d 1192 (1987); *Cajigas* v. *Warden,* 179 Conn. 78, 81, 425 A.2d 571 (1979); and thus arguably not waivable; see *State* v. *Kelley,* 206 Conn. 323, 332, 537 A.2d 483 (1988); the rule is rather a prudential limitation on the right to raise constitutional claims in collateral proceedings. See *Vena* v. *Warden,* 154 Conn. 363, 366–67, 225 A.2d 802 (1966); see also *Fay* v. *Noia,* 372 U.S. 391, 438, 83 S. Ct. 822, 9 L. Ed. 2d 837 (1963).

Due to our limited grant of jurisdiction, we hold in abeyance the question whether the holding in *Stone* v. *Powell,* 428 U.S. 465, 96 S. Ct. 3037, 49 L. Ed. 2d 1067 (1976), that claims under the exclusionary rule of the fourth amendment may not normally be raised in federal habeas corpus proceedings applies equally to state habeas corpus proceedings. This issue must await proper briefing in another case.

[2] During his closing argument, counsel for the petitioner argued that the gun should have been suppressed because it was seized illegally. Throughout the proceeding, the petitioner's principal defense was that the gun did not belong to him.

Cf. *State* v. *Barrett,* 205 Conn. 437, 443–44, 534 A.2d 219 (1987). In the case at hand, the petitioner's claim implicates his right to be free from unreasonable searches, guaranteed by the fourth and fourteenth amendments to the United States constitution. In addition, the record is adequate to support review of his claim. See *State* v. *Williams,* 205 Conn. 456, 460, 534 A.2d 230 (1987); *State* v. *McIver,* 201 Conn. 559, 563, 518 A.2d 1368 (1986). Accordingly, we turn to the merits.

## II

Whether the exclusionary rule of the fourth amendment to the United States constitution[3] applies to probation revocation hearings requires us to explore the rule's underlying purpose. In *United States* v. *Calandra,* 414 U.S. 338, 347, 94 S. Ct. 613, 38 L. Ed. 2d 561 (1974), the United States Supreme Court observed: "The purpose of the exclusionary rule is not to redress the injury to the privacy of the search victim . . . . Instead, the rule's prime purpose is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures . . . ." Application of the rule is thus appropriate in circumstances in which this purpose is likely to be furthered. Id., 348. Under this approach, we "must weigh the potential injury" to the probation revocation process from the exclusion of relevant evidence "against the potential benefits of the rule as applied in this context." Id., 349; see also *United States* v. *Janis,* 428 U.S. 433, 447, 96 S. Ct. 3021, 49 L. Ed. 2d 1046 (1976).

---

[3] In his brief, defense counsel referred to article first, § 7, of the Connecticut constitution. Nevertheless, at oral argument, he conceded that only the exclusionary rule of the fourth amendment to the United States constitution is at issue. Accordingly, we do not consider whether the Connecticut constitution compels a different result.

The purpose of probation revocation proceedings is to determine whether a probationer is complying with the conditions of his probation. *United States* v. *Winsett,* 518 F.2d 51, 55 (9th Cir. 1975); see also *Griffin* v. *Wisconsin,* 483 U.S. 868, 874–75, 107 S. Ct. 3164, 97 L. Ed. 2d 709 (1987). In such proceedings, the government has an interest in accurate factfinding that is likely to be impaired when otherwise reliable and relevant evidence is excluded from the proceeding. *United States* v. *Winsett,* supra. Against this interest, we must balance the deterrent effect that may result from applying the exclusionary rule to probation hearings under the facts of this case.

We conclude that application of the rule would at best achieve only a marginal deterrent effect. Illegally obtained evidence is inadmissible in a criminal trial. *Mapp* v. *Ohio,* 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081, reh. denied, 368 U.S. 871, 82 S. Ct. 23, 7 L. Ed. 2d 72 (1961). Where, as here, there is no evidence that the police officer was aware that the suspect is on probation,[4] further exclusion of such evidence in a probation revocation hearing would not appreciably enhance the deterrent effect already created by the inadmissibility of the evidence at trial. Since the use of evidence in a probation revocation hearing "falls outside the offending officer's zone of primary interest"; *United States* v. *Janis,* supra, 458; exclusion of such evidence will not significantly affect a police officer's motivation in conducting a search. Accordingly, we agree with the Appellate Court's view that the balance of interests does not favor the application of the exclusionary rule to a probation hearing in these circum-

---

[4] During the probation revocation hearing, Greene testified that he knew the petitioner from previous incidents and had seen his car numerous times. The petitioner, however, did not introduce any evidence at this hearing or during the habeas corpus proceedings indicating that Greene was or should have been aware of his probationary status.

stances. Accord *United States* v. *Bazzano,* 712 F.2d 826, 832–33 (3d Cir. 1983), cert. denied sub nom. *Mollica* v. *United States,* 465 U.S. 1078, 104 S. Ct. 1439, 79 L. Ed. 2d 760 (1984); *United States* v. *Vandemark,* 522 F.2d 1019, 1020 (9th Cir. 1975); *United States* v. *Winsett,* supra, 54; *United States* v. *Hill,* 447 F.2d 817, 818 (7th Cir. 1971); *United States ex rel. Sperling* v. *Fitzpatrick,* 426 F.2d 1161, 1164 (2d Cir. 1970); *Ex parte Caffie,* 516 So. 2d 831, 835–36 (Ala. 1987); *State* v. *Sears,* 553 P.2d 907, 913 (Alaska 1976); *State* v. *Alfaro,* 127 Ariz. 578, 579–80, 623 P.2d 8 (1980) (en banc); *People* v. *Ressin,* 620 P.2d 717, 720 (Colo. 1980); *Thompson* v. *United States,* 444 A.2d 972, 974 (D.C. App. 1982); *People* v. *Dowery,* 62 Ill. 2d 200, 204–206, 340 N.E.2d 529 (1975); *Kain* v. *State,* 378 N.W.2d 900, 901–902 (Iowa 1985); *State* v. *Davis,* 375 So. 2d 69, 74–75 (La. 1979); *State* v. *Caron,* 334 A.2d 495, 499 (Me. 1975); *State* v. *Thorsness,* 165 Mont. 321, 326–27, 528 P.2d 692 (1974); *Stone* v. *Shea,* 113 N.H. 174, 176–77, 304 A.2d 647 (1973); *State* v. *Lombardo,* 306 N.C. 594, 600, 295 S.E.2d 399 (1982); *State* v. *Nettles,* 287 Or. 131, 139, 597 P.2d 1243 (1979); *State* v. *Spratt,* 386 A.2d 1094, 1095 (R.I. 1978); *Gronski* v. *State,* 700 P.2d 777, 780 (Wyo. 1985); contra *Adams* v. *State,* 153 Ga. App. 41, 42, 264 S.E.2d 532 (1980); *State* v. *Burkholder,* 12 Ohio St. 3d 205, 206–207, 466 N.E.2d 176, cert. denied, 469 U.S. 1062, 105 S. Ct. 545, 83 L. Ed. 2d 432 (1984); *Michaud* v. *State,* 505 P.2d 1399, 1402–1403 (Okla. Crim. App. 1973).

The petitioner nonetheless argues that the protection of judicial integrity is a distinct purpose of the exclusionary rule that warrants application of the rule to this case. We are not persuaded. While the exclusionary rule of the fourth amendment may originally have had an independent basis in concern for judicial integrity; see, e.g., *Elkins* v. *United States,* 364 U.S. 206, 222–23, 80 S. Ct. 1437, 4 L. Ed. 2d 1669 (1960);

over time this interest has been subordinated to the courts' focus on deterrence. See *United States* v. *Janis, supra,* 458–59 n.35; *Tirado* v. *C.I.R.,* 689 F.2d 307, 309–10 n.3 (2d Cir. 1982), cert. denied, 460 U.S. 1014, 103 S. Ct. 1256, 75 L. Ed. 2d 484 (1983). We therefore perceive no need to consider judicial integrity as an independently significant factor.

Finally, we emphasize that in holding that the exclusionary rule does not apply to this case, we do not reach the question of whether the exclusionary rule would apply in probation revocation proceedings when the police officer who had conducted the search was aware or had reason to be aware of the suspect's probationary status. If illegally obtained evidence was admissible in such circumstances, the police officer might very well discount the fact that such evidence was inadmissible at a criminal trial, believing that incarceration of the probationer would instead be achieved through the revocation of his probation. Application of the exclusionary rule to the probation hearing might therefore contribute significantly to the deterrence of illegal searches. See *United States* v. *Bazzano, supra,* 833 n.1; *United States* v. *Rea,* 678 F.2d 382, 389–90 (2d Cir. 1982); *United States* v. *Workman,* 585 F.2d 1205, 1211 (4th Cir. 1978); *United States* v. *Winsett, supra,* 54 n.5; *Ex parte Caffie, supra,* 836; *State* v. *Sears, supra,* 914; *People* v. *Ressin, supra,* 720–21; *Thompson* v. *United States, supra,* 974; *Kain* v. *State, supra,* 902; *State* v. *Davis, supra,* 75.

### III

The petitioner's final contention is that failure to apply the exclusionary rule to probation revocation hearings violates his right to equal protection of the law. The petitioner does not argue that distinguishing between trials and probation revocation hearings for the purposes of the rule creates an invidious classifi-

cation warranting strict scrutiny. See *Laden* v. *Warden,* 169 Conn. 540, 542, 363 A.2d 1063 (1975). He maintains, however, that because failure to apply the rule in probation revocation hearings impinges on a fundamental right, his right to liberty, it must be justified by a compelling state interest. See id. We are not persuaded. While the loss of liberty resulting from the revocation of probation is a serious deprivation requiring that the probationer be accorded due process of law; *Gagnon* v. *Scarpelli,* 411 U.S. 778, 781, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973); *Morrissey* v. *Brewer,* 408 U.S. 471, 480–84, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972); the liberty interest at stake is not absolute, but conditioned on compliance with the terms of probation. It therefore does not rise to the level of a fundamental right triggering strict scrutiny analysis. See *Morrissey* v. *Brewer,* supra, 480;[5] see also *Griffin* v. *Wisconsin,* supra; cf. *Laden* v. *Warden,* supra, 544.

Under these circumstances, the appropriate inquiry is whether there is a rational basis for the admission of evidence in probation revocation hearings that would be subject to the exclusionary rule in criminal trials. See *State* v. *Davis,* 190 Conn. 327, 342–43, 461 A.2d 947, cert. denied, 464 U.S. 938, 104 S. Ct. 350, 78 L. Ed. 2d 315 (1983); *Liistro* v. *Robinson,* 170 Conn. 116, 124, 365 A.2d 109 (1976); *Laden* v. *Warden,* supra, 543. As we noted above, the state has a legitimate interest in accurate factfinding in probation revocation proceedings. This interest is clearly furthered by the admission of all reliable evidence, even that which is arguably obtained in violation of the fourth amendment. In addition, the state has an interest in deterring illegal

---

[5] Although *Morrissey* v. *Brewer,* 408 U.S. 471, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972), dealt with the revocation of probation, "revocation of probation where sentence has been imposed previously is constitutionally indistinguishable from the revocation of parole." *Gagnon* v. *Scarpelli,* 411 U.S. 778, 782 n.3, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973).

searches and seizures. This interest, however, is not served by the exclusion of illegally seized evidence in probation revocation proceedings when the offending officer was unaware of the suspect's probationary status. We conclude that failure to apply the exclusionary rule in such circumstances is rationally related to legitimate state interests.

Accordingly, we affirm the judgment of the Appellate Court.

In this opinion the other justices concurred.