## S10G1337. THE STATE v. THACKSTON.
### (716 SE2d 517)

THOMPSON, Justice.

While on probation in Douglas County, Georgia, Hulon Thackston was charged with drug-related offenses in Paulding County, Georgia, after police stopped him for a traffic violation in March 2007 and discovered methamphetamine during a search of his car. The Douglas County Court issued a probation warrant for his arrest based on the Paulding County charges. Thackston was arrested on the probation warrant in October 2007, and while executing the warrant, officers saw methamphetamine on a table. They then obtained and executed a search warrant and found more methamphetamine and drug paraphernalia. Thackston moved to suppress the evidence seized both in March and October in the Paulding County criminal case. The trial court granted the motion on the grounds that the March seizure was unconstitutional and the October search and seizure constituted fruit of the poisonous tree. The Paulding County prosecutor nolle prossed the criminal charges against Thackston. Thackston then filed a motion to suppress in the Douglas County probation revocation case on the same grounds raised in the criminal case and filed a plea in bar, arguing that the State was barred from contesting the motion to suppress under the doctrine of collateral estoppel. The probation court denied the plea in bar, denied the motion to suppress, and revoked Thackston's probation.

The Court of Appeals reversed, concluding that the elements of collateral estoppel were met and the State was precluded from relitigating the suppression issue in the revocation case. *Thackston v. State,* 303 Ga. App. 718, 720 (694 SE2d 136) (2010). In reaching this conclusion, however, the Court of Appeals failed to determine preliminarily whether the exclusionary rule applied in probation revocation proceedings. Instead, it focused only on the merits of Thackston's challenge to the validity of the search warrant and the issue of collateral estoppel. The State filed a petition for certiorari which we granted to determine whether the exclusionary rule applies in probation revocation proceedings. We hold it does not and reverse the decision of the Court of Appeals.

1. The exclusionary rule is a judicially created remedy adopted to protect Fourth Amendment rights by deterring illegal searches and seizures. It is not intended to " 'cure the invasion of the defendant's rights which he has already suffered,' " *United States v. Leon*, 468 U. S. 897, 906 (104 SC 3405, 82 LE2d 677) (1984), and it does not "proscribe the introduction of illegally seized evidence in all proceedings or against all persons." *Stone v. Powell*, 428 U. S. 465, 486 (96 SC 3037, 49 LE2d 1067) (1976). Because the rule is not constitutionally mandated and because of its broad deterrent purpose, it consistently has been applied only "where its remedial objectives are thought most efficaciously served." *United States v. Calandra*, 414 U. S. 338, 348 (94 SC 613, 38 LE2d 561) (1974). See *Pennsylvania Bd. of Probation & Parole v. Scott*, 524 U. S. 357, 365 (118 SC 2014, 141 LE2d 344) (1988) (refusing to apply exclusionary rule in parole revocation hearings because it would hinder function of state parole systems and alter flexible, administrative nature of parole revocation proceedings); *Immigration &c. Svc. v. Lopez-Mendoza*, 468 U. S. 1032 (104 SC 3479, 82 LE2d 778) (1984) (rule not applicable in civil deportation proceedings due to high social costs of allowing immigrant to remain illegally in United States and incompatibility of rule with civil, administrative nature of proceedings); *United States v. Janis*, 428 U. S. 433 (96 SC 3021, 49 LE2d 1046) (1976) (exclusionary rule not applicable in civil tax proceedings because costs of exclusion would outweigh marginal deterrence benefits); *Calandra*, supra (exclusionary rule not applicable in grand jury proceedings because flexible, non-adversarial nature of those proceedings would be jeopardized by application of the rule).

In deciding when to extend the exclusionary rule to contexts other than criminal trials, the United States Supreme Court has adopted a balancing test to weigh the likelihood of deterrence against the costs of withholding information in the truth-seeking process. *Illinois v. Krull*, 480 U. S. 340, 347-348 (107 SC 1160, 94 LE2d 364) (1987). See *State v. Young*, 234 Ga. 488, 491 (216 SE2d 586) (1975). Here, the context to which Thackston seeks to apply the exclusionary rule is probation revocation hearings, the purpose of which is to determine whether the probationer has complied with the conditions of his probation and the outcome of which significantly informs the State whether the probationer is ready or capable of rehabilitation by integration into society. As stated by the Ninth Circuit Court of Appeals in *United States v. Winsett*, 518 F2d 51, 54-55 (9th Cir. 1975), a case involving the issue now before this Court:

> The primary purpose of probation, which has become an integral part of our penal system, is to promote the rehabilitation of the criminal by allowing him to integrate into

society as a constructive individual, without being confined for the term of the sentence imposed. Cf. *Morrissey v. Brewer*, 408 U. S. 471, 477 (92 SC 2593, 33 LE2d 484) (1972). An important aspect of our probation system is the placing of certain restrictions on the probationer, such as the requirement that he not associate with criminals or travel outside the judicial district. These conditions serve a dual purpose in that they enhance the chance for rehabilitation while simultaneously affording society a measure of protection. Because violation of probation conditions may indicate that the probationer is not ready or is incapable of rehabilitation by integration into society, it is extremely important that all reliable evidence shedding light on the probationer's conduct be available during probation revocation proceedings.

(Emphasis omitted.) Recognizing the importance of having available for consideration all reliable, relevant evidence in probation revocation proceedings, the *Winsett* Court refused to extend the exclusionary rule to probation revocation hearings because its application would frustrate the remedial purposes of the probation system. Id.

The United States Supreme Court has not specifically addressed whether the federal exclusionary rule applies in probation revocation hearings but has refused to extend the rule to parole revocation proceedings. See *Scott*, supra. Like the *Winsett* Court, the Court in *Scott* acknowledged the significant costs imposed by the exclusionary rule because it precludes consideration of reliable, probative evidence and detracts from the truth-finding process. Id. at 364-365. The Court there emphasized, "[a]lthough we have held these costs to be worth bearing in certain circumstances, our cases have repeatedly emphasized that the rule's 'costly toll' upon truth-seeking and law enforcement objectives presents a high obstacle for those urging application of the rule. [Cit.]" Id.

Although *Scott* dealt with parole, not probation, revocation hearings, we find no legally significant difference in the importance of the truth-seeking functions in either type of proceeding. In both, the factfinder is charged with the responsibility of determining whether the conditions of release have been complied with and the protection of the public and its interest in ensuring that criminal sentences are properly served. We therefore agree with the rationale of *Scott* and *Winsett* and find it extremely important to the administration of our state probation system that all reliable evidence relevant to the probationer's conduct be available during revocation proceedings.

At the same time, we find the exclusionary rule's deterrence

benefits do not outweigh the costs to the truth-seeking objective which is paramount in our probation system. Application of the rule to revocation hearings would provide only minimal deterrence benefits because "application of the rule in the criminal trial context already provides significant deterrence of unconstitutional searches." *Scott*, supra, 524 U. S. at 364. See *Winsett*, supra at 54. Moreover, the rule itself is based on the premise that a police officer knows the way in which he conducts a search will affect the prosecution's ability to secure a conviction in a criminal trial. To apply the exclusionary rule to probation revocation proceedings would thus require an assumption that every officer also conducts searches as if the suspect was also a probationer and with knowledge that evidence procured may be used to ensure compliance with probation conditions via administrative proceedings. We find this to be an unrealistic assumption given the police officer's primary goal of obtaining evidence to assist in the successful prosecution of those who commit crimes. See *Janis*, supra, 428 U. S. at 458 (use of evidence in probation revocation hearing "falls outside the offending officer's zone of primary interest"); *Calandra*, supra, 414 U. S. at 351 (unrealistic to assume application of exclusionary rule to grand jury proceedings would further goal of deterrence). See also *North Carolina v. Lombardo*, 306 N.C. 594, 600 (295 SE2d 399) (1982) (extension of exclusionary rule to probation revocation hearings adds nothing to deterrent effect because rule is built on notion that seized evidence provides foundation for and affects strength of State's *criminal* case at *trial*). Even accepting this assumption, however, the officer will be substantially deterred from violating the suspect's Fourth Amendment rights by the application of the exclusionary rule to the criminal trial. See *Scott*, supra, 524 U. S. at 368.

Because application of the exclusionary rule to probation revocation proceedings would achieve only marginal deterrent effects and would significantly alter and affect the proper administration of the probation system in this state, we find the deterrence benefits of the exclusionary rule do not outweigh the costs to the system. Therefore, under the proper balancing test, neither the federal nor state constitution requires application of the exclusionary rule in state probation revocation proceedings. See *Krull*, supra, 480 U. S. at 347-348. Georgia thus joins the majority of jurisdictions which have considered the issue and reached a conclusion consistent with the reluctance of courts to extend the exclusionary rule beyond the trial setting[1] and the general recognition of the important administrative

---

[1] Virtually every jurisdiction that has considered the issue has similarly determined that application of the exclusionary rule does not significantly further the rule's goal of deterrence

goals served by state probation systems. See *Scott*, 524 U. S. 357, 365-367; Admissibility, in Federal Probation Revocation Proceeding, of Evidence Obtained Through Unreasonable Search and Seizure or in Absence of Miranda Warnings, 30 ALR Fed. 824 (1976). To the extent the Court of Appeals' decision in *Amiss v. State*, 135 Ga. App. 784 (219 SE2d 28) (1975), which did not apply the proper constitutional balancing test, is contrary to our holding today, it is overruled.[2]

2. Nor do we find any federal or state statutory law requiring application of the exclusionary rule in probation revocation proceedings. Although Thackston argues the admission of such evidence is prohibited under OCGA § 17-5-30 (b), a statute providing that if a motion is granted to suppress illegally seized property that property "shall not be admissible in evidence against the movant in any trial," this provision is inapplicable inasmuch as both this Court and the Court of Appeals consistently have held that a probation revocation hearing does not qualify as a trial. See *Meadows v. Settles*, 274 Ga. 858, 859 (2) (561 SE2d 105) (2002); *Johnson v. State*, 214 Ga. 818, 819 (108 SE2d 313) (1959); *Howard v. State*, 168 Ga. App. 143, 144 (2) (308 SE2d 424) (1983). To hold otherwise would require us to ignore the plain meaning and import of the term "trial" contrary to basic rules of statutory construction.

3. Although not necessary to the resolution of this appeal, we are compelled in this case to address another issue raised on certiorari, whether the Court of Appeals erred by holding that an appellee is barred from raising an argument on an issue on appeal because that argument was not raised in the trial court.

The Court of Appeals, after concluding that the exclusionary rule applied in revocation proceedings, held that the State was precluded from arguing on appeal that the validity of the October 2007 search warrant was not actually litigated and determined in the

---

in a probation revocation proceeding. See, e.g., *United States v. Bazzano*, 712 F2d 826 (3d Cir. 1983); *United States v. Armstrong*, 187 F3d 392 (4th Cir. 1999); *United States v. Brown*, 488 F2d 94 (5th Cir. 1973); *United States v. Farmer*, 512 F2d 160 (6th Cir. 1975); *United States v. Hill*, 447 F2d 817 (7th Cir. 1971); *United States v. Frederickson*, 581 F2d 711 (8th Cir. 1978); *Winsett*, supra, 518 F2d 51; *United States v. Finney*, 897 F2d 1047 (10th Cir. 1990). For state cases see *Payne v. Robinson*, 541 A2d 504 (II) (Conn. 1988) and cases cited therein; *State v. Lombardo*, supra, 306 N.C. at 600; *Wright v. Ohio Adult Parole Auth.*, 661 NE2d 728, 735 (1996) and cases cited therein.

[2] We also overrule the following cases to the extent they hold illegally seized evidence is inadmissible in probation revocation hearings: *Colvert v. State*, 237 Ga. App. 670 (516 SE2d 377) (1999) (vacating and remanding where trial court revoked probation based on evidence that may have been subject to suppression); *Owens v. State*, 153 Ga. App. 525 (2) (265 SE2d 856) (1980) (reversing revocation of probation based on improper admission of illegally seized evidence at revocation hearing); *Adams v. State*, 153 Ga. App. 41 (264 SE2d 532) (1980) (holding illegally seized evidence inadmissible in revocation hearing); *Porter v. State*, 142 Ga. App. 481 (236 SE2d 172) (1977) (same); *Giles v. State*, 149 Ga. App. 263 (1) (254 SE2d 154) (1979) (same); *Austin v. State*, 148 Ga. App. 784 (1) (252 SE2d 696) (1979) (same).

prior criminal case (and therefore remained to be decided) because the State did not make this argument in the trial court. See *Thackston v. State*, supra at 720, n. 4. The case cited by the Court of Appeals in support of this proposition, however, as well as other related case law, stands only for the proposition that an *appellant* must raise all issues in the trial court or the issue will be deemed abandoned on appeal. See *Holland v. State*, 232 Ga. App. 284 (2) (501 SE2d 829) (1998). See also *Crawford v. State*, 267 Ga. 543 (6) (480 SE2d 573) (1997); *Earnest v. State*, 262 Ga. 494 (1) (422 SE2d 188) (1992). An expansion of the rule making it equally applicable to an *appellee* contravenes the well-established "right for any reason rule" and imposes upon an appellee an unnecessary and overwhelming burden. See *City of Gainesville v. Dodd*, 275 Ga. 834, 835 (573 SE2d 369) (2002) (appellate court will affirm judgment if it is correct for any reason, even if reason is different than reason upon which trial court relied). We agree with the State in this regard that it would be nearly impossible for a prevailing party to anticipate and place in the record every conceivable argument in support of the trial court's decision based on the possibility that an appellate court may reverse that decision on a ground not raised or argued by the parties. Accordingly, the language in footnote 4 of the Court of Appeals' opinion is hereby disapproved.

*Judgment reversed. All the Justices concur, except Benham, J., who dissents as to Divisions 1 and 2.*

BENHAM, Justice, concurring in part and dissenting in part.

While I join Division 3 of the majority opinion, I respectfully dissent from the majority's overturning of more than three decades of precedent and its decision to permit the admission of unconstitutionally obtained evidence in probation revocation proceedings. As a matter of preserving judicial integrity, maintaining public confidence in the system of justice, and applying the clear legislative intent of the General Assembly to suppress illegally seized evidence as demonstrated by its codification of the exclusionary rule, I would continue to follow well-established precedent and hold that the exclusionary rule is applicable to probation revocation proceedings.

The majority has relied on cases such as *United States v. Calandra*, 414 U. S. 338, 348 (94 SC 613, 38 LE2d 561) (1974), and *Pennsylvania Bd. of Probation & Parole v. Scott*, 524 U. S. 357, 362-364 (118 SC 2014, 141 LE2d 344) (1998), in reasoning that the purpose of utilizing the exclusionary rule is to deter law enforcement officials from conducting unconstitutional searches and seizures, and any benefit the rule may have to this effect is essentially exhausted under the context of a criminal trial. While taking this reasoning into account, I urge the majority to consider whether

deterrence is the only proper goal of precluding illegally obtained evidence in a probation revocation hearing.

The United States Supreme Court and the courts of this state have long acknowledged the Fourth Amendment rights of probationers. *Griffin v. Wisconsin*, 483 U. S. 868, 873 (107 SC 3164, 97 LE2d 709) (1987) ("A probationer's home, like anyone else's, is protected by the Fourth Amendment's requirement that searches be 'reasonable.' "); *Allen v. State*, 258 Ga. 424, 425 (369 SE2d 909) (1988) ("[Appellant] argues that the Fourth Amendment applies to probationers as well as other citizens. He is correct."); *Hunter v. State*, 139 Ga. App. 676, 678 (229 SE2d 505) (1976) ("The right to be free from unreasonable searches and seizures extends to all persons, including probationers."). Recognizing the rights of its citizens to be free from unreasonable search and seizure, Georgia courts have upheld the exclusionary rule to protect its citizens from the use of evidence flowing from Fourth Amendment violations in probation revocation hearings for the past 36 years. In the seminal case of *Amiss v. State*, 135 Ga. App. 784 (219 SE2d 28) (1975), the Georgia Court of Appeals established the widely accepted view that motions to suppress such evidence are appropriate in probation revocation proceedings, finding the invasion of constitutional rights in these proceedings to be indistinguishable from the invasion of constitutional rights in criminal trials. Id. at 786. The Georgia appellate courts have adhered to this position steadfastly — until today. See *Colvert v. State*, 237 Ga. App. 670 (516 SE2d 377) (1999); *Owens v. State*, 153 Ga. App. 525 (2) (265 SE2d 856) (1980); *Adams v. State*, 153 Ga. App. 41 (264 SE2d 532) (1980); *Giles v. State*, 149 Ga. App. 263 (1) (254 SE2d 154) (1979); *Austin v. State*, 148 Ga. App. 784 (1) (252 SE2d 696) (1979); *Porter v. State*, 142 Ga. App. 481 (236 SE2d 172) (1977). Without giving a reason for doing so, the majority's holding that the exclusionary rule may no longer be asserted in probation revocation proceedings jettisons decades of precedent when nothing has materially changed. I find no reason to overturn this long-standing rule of law.

While the majority considers the exclusionary rule's deterrent effect in reaching its decision, it has completely disregarded the rule's second and arguably more significant purpose — "the imperative of judicial integrity." *Elkins v. United States*, 364 U. S. 206, 222 (80 SC 1437, 4 LE2d 1669) (1960). If we allow police and other law enforcement officials — those responsible for *enforcing* our rules of law — to break with impunity the very rules that serve as the foundation of our justice system, where do we draw the line? As Justice Brandeis of the United States Supreme Court has advocated, "In a government of laws, existence of the government will be imperilled if it fails to observe the law scrupulously. . . . Against that

pernicious doctrine this court should resolutely set its face." *Olmstead v. United States*, 277 U. S. 438, 485 (48 SC 564, 72 LE 944) (1928) (dissenting) (speaking out against the use of unlawfully seized evidence in criminal proceedings and emphasizing the importance of protecting liberty through constitutional rights). Similarly, the Court of Appeals in *Amiss* reasoned that permitting the use of such evidence in a probation revocation proceeding would "sanction 'defiance of the . . . Constitution' " and hinder judicial integrity. *Amiss*, supra, 135 Ga. App. at 785 (quoting *Weeks v. United States*, 232 U. S. 383, 393 (34 SC 341, 58 LE 652) (1914)). See *Brown v. Illinois*, 422 U. S. 590, 599, 611 (95 SC 2254, 45 LE2d 416) (1975); *Terry v. Ohio*, 392 U. S. 1, 12-13 (88 SC 1868, 20 LE2d 889) (1968). Public confidence in our system of justice is of utmost importance. The uniform application of established rules of law both within and outside the context of criminal trial proceedings engenders not only the public's faith and trust in our system of justice, but also respect for and cooperation with the law. The idea that law enforcement officials may not disregard rules of law at the expense of constitutional rights is not a novel concept and has been promulgated throughout our federal and state court systems. To admit evidence resulting from these unlawful actions, whether in criminal trials or probation revocation proceedings, is an impermissible extension of this defiance.

The codification of the exclusionary rule in OCGA § 17-5-30 strengthens the argument for its use in probation revocation proceedings. Unlike federal courts, which do not permit motions to suppress illegally obtained evidence outside of the criminal trial context, the duly elected officials of this state have not demonstrated an intent to limit the exclusionary rule to criminal trials. To the contrary, the General Assembly has codified the exclusionary rule without distinguishing criminal trials from other types of proceedings. OCGA § 17-5-30 (a). The plain language of the statute, enacted in 1966, only requires that a motion to suppress be made "before a court with jurisdiction to try the offense." OCGA § 17-5-30 (c) (specifying different fora where "a criminal accusation is filed or if an indictment or special presentment is returned by a grand jury"). Probation revocation proceedings, which are held before trial courts, plainly meet this statutory requirement. See *Colvert*, supra, 237 Ga. App. at 670 (vacating and remanding where the trial court failed to conduct an evidentiary hearing based on the defendant's "properly filed" motion to suppress). The legislature has not chosen to amend the exclusionary rule in the lengthy span of time following the *Amiss* holding, and I do not see a reason to make a distinction where the legislature has not. "Where a ruling made by an able bench, after full argument by able counsel, has been followed and applied in divers[e]

cases, and has been left unmolested by the General Assembly, it should not, unless for impelling reasons, thereafter be changed by the court." *Cobb v. State*, 187 Ga. 448, 452 (200 SE 796) (1939). The majority has not given any reason, much less an impelling one, to change the well-settled law of this state, and therefore I must dissent.

DECIDED MAY 31, 2011 —
RECONSIDERATION DENIED JUNE 27, 2011.

*David McDade, District Attorney, James A. Dooley, Thomas E. Kegley, Assistant District Attorneys,* for appellant.
*Steven A. Cook,* for appellee.
*Hogue & Hogue, Laura D. Hogue, Adam M. Hames, J. Scott Key, Cynthia W. Roseberry,* amici curiae.