## A11A1854. JONES v. THE STATE.
(723 SE2d 697)

DOYLE, Presiding Judge.

Rodger Dale Jones, Jr., was convicted of felony possession of methamphetamine.[1] He appeals, arguing that the trial court erred by denying his motion to suppress. We affirm, for reasons that follow.

> While the trial court's findings as to disputed facts in a ruling on a motion to suppress will be reviewed to deter-

---

[1] OCGA § 16-13-30 (a).

mine whether the ruling was clearly erroneous, where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review.[2]

"Here, the relevant evidence is undisputed, and we therefore review the trial court's legal rulings de novo."[3]

So viewed, the record shows that officers of the Walton County drug enforcement team received complaints from neighbors that drugs were being sold out of a house at 4514 Yorktown Drive in Walton County. The team could not, however, establish sufficient probable cause to obtain a search warrant on the house. Instead, they performed a computer search and determined that one of the residents of the home, Tiffany Brown, had an outstanding arrest warrant for failing to appear before the magistrate court on August 3, 2010, on a charge of allowing an animal to run at large.

On August 12, 2010, Michael Stamey, a narcotics investigator, received information from a neighbor that Brown had just returned home in her vehicle and entered the house. Although they did not normally search for persons with outstanding warrants for failure to appear in magistrate court, five members of the narcotics unit went to the home and placed it under surveillance in an attempt to locate and arrest Brown.[4] When the police arrived, the vehicle registered to Brown was parked in front of the house. Approximately one hour after beginning surveillance, Stamey knocked on the front door "to see if [Brown] was there . . . [and] would come to the door," and a woman answered. In response to questioning, the woman denied that she was Brown, denied that Brown was in the residence, and refused to grant the police permission to enter the house. Stamey and the other five officers nevertheless entered the home to search for Brown, and they "swept the house," checking the identities of the people they encountered inside. The police did not open drawers or cabinets or otherwise search for drugs.

Stamey found Jones lying on the bed in a bedroom with a comforter covering his lower body, including his hands. When Jones refused to comply with Stamey's repeated commands to show his hands, the officer became concerned about his safety and took Jones to the ground. While performing a patdown on Jones's pockets, Stamey felt a small baggie, which he believed from his experience to

---

[2] (Citations omitted.) *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994).

[3] *Tunali v. State*, 311 Ga. App. 844, 845 (717 SE2d 341) (2011).

[4] Officers arrived at the home approximately 30 minutes after the telephone call from the neighbor stating that Brown had arrived home.

be a baggie containing narcotics, and a hard cylindrical item with a bulb-shaped end, which Stamey identified as a methamphetamine pipe. Stamey seized the objects, and the pipe was later determined to contain methamphetamine residue.

Brown was not home when the officers initially entered the house, but she arrived approximately 30 minutes later in Jones's vehicle. Brown confirmed that she lived at the house, but indicated that she was in the process of being evicted.

Jones filed a motion to suppress the evidence found on his person, which motion was denied after an evidentiary hearing. Following the denial of his application for interlocutory appeal, the case proceeded to a bench trial on stipulated facts, and the trial court found Jones guilty of possession of methamphetamine.

In several enumerations, Jones argues that the trial court erred by denying his motion to suppress.

1. Jones contends that the police officers' entry into the house was illegal. We disagree.

It is well settled that "for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within."[5] Here, it is undisputed that Brown lived at the house on Yorktown Drive on the day at issue. And, despite Jones's argument to the contrary, the police reasonably believed that Brown was in the house at the time of their entry based upon information from a neighbor, who reported seeing her arrive home in her car and enter the house 30 minutes before the officers' arrival, and the fact that the vehicle registered to Brown was parked in front of the house.[6]

Jones further argues that the police officers' use of Brown's arrest warrant for a minor magistrate court charge was pretextual and rendered their entry into the house illegal. To support this argument, Jones solely relies on *Jones v. United States*,[7] which is inapposite. In *Jones*, federal agents secured a daytime search warrant for the defendant's home, but they did not search the house until nighttime after conducting surveillance to obtain more evidence of an illegal distillery.[8] The search was, therefore, not con-

---

[5] *Payton v. New York*, 445 U. S. 573, 603 (IV) (100 SC 1371, 63 LE2d 639) (1980). See *Brannan v. State*, 275 Ga. 70, 73 (2) (b) (561 SE2d 414) (2002) ("An arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within.") (punctuation omitted); *Wall v. State*, 291 Ga. App. 278, 279 (661 SE2d 656) (2008) (same).

[6] See *Wall*, 291 Ga. App. at 279; *State v. Wright*, 204 Ga. App. 382, 382-383 (2) (419 SE2d 334) (1992).

[7] 357 U. S. 493 (78 SC 1253, 2 LE2d 1514) (1958).

[8] See id. at 494-495.

ducted pursuant to a valid warrant, and the agents did not have consent to search.[9] The Supreme Court held that the officers' belief that "certain articles subject to seizure" would be found in the house was insufficient to justify the warrantless entry into the home, as was the officers' attempt to execute a warrantless arrest of the defendant based upon their belief that he had committed a felony.[10]

Here, the officers' entry into the home was not warrantless. Instead, the officers entered Brown's residence, reasonably believing she was present in the home at the time, to execute a valid arrest warrant.[11] Importantly, the police limited their search to those areas in which Brown might be located; there was no evidence that they attempted to search the house for narcotics or any other items.[12] Under these circumstances, because the police had a valid arrest warrant for Brown (albeit for a minor infraction), and because the officers properly limited their search of her home to those areas where she might be located, the fact that they might have been motivated to enter the house to search for drugs was immaterial and does not render the entry and subsequent seizure of evidence from Jones illegal.[13]

2. Jones further argues that the trial court erred by concluding that his detention and patdown were justified because Stamey did not have a reasonable belief that Jones was armed and dangerous. This argument is without merit.

Under *Terry v. Ohio*,[14]

a law enforcement officer, for his own protection and safety,

---

[9] See id. at 495, 497.

[10] See id. at 497-499.

[11] Compare *Steagald v. United States*, 451 U. S. 204, 213-214 (III) (101 SC 1642, 68 LE2d 38) (1981) (holding that police cannot legally enter a third party's home to execute an arrest warrant for another individual absent consent, exigent circumstances, or a search warrant); *Looney v. State*, 293 Ga. App. 639, 641 (667 SE2d 893) (2008) ("[A] law enforcement officer may not legally search for the subject of an arrest warrant in the home of a third party without first obtaining a search warrant, absent exigent circumstances or consent.").

[12] See *Maryland v. Buie*, 494 U. S. 325, 332-333 (III) (110 SC 1093, 108 LE2d 276) (1990) (police can legally enter a person's home to execute an arrest warrant for that individual, who they reasonably believe is home at the time, and they can search any area of the home in which the person might be found); *State v. Wright*, 204 Ga. App. 382, 383-384 (4) (419 SE2d 334) (1992) (while attempting to execute an arrest warrant for a person at their residence, law enforcement was "entitled to enter and to search *anywhere* in the [dwelling] in which [a person] *might* be found") (punctuation omitted; emphasis in original).

[13] See, e.g., *Whren v. United States*, 517 U. S. 806, 814 (II) (B) (116 SC 1769, 135 LE2d 89) (1996) (reasonableness of a traffic stop is based on objective criteria, not on actual motives of police); *Pincherli v. State*, 295 Ga. App. 408, 411-412 (2) (a) (671 SE2d 891) (2008) ("an officer's ulterior law enforcement motive does not preclude him, under Fourth Amendment law, from lawfully executing a traffic stop when he observes a traffic violation"); *Somesso v. State*, 288 Ga. App. 291, 294 (2) (b) (653 SE2d 855) (2007) (same).

[14] 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968).

may conduct a patdown to find weapons that he reasonably believes or suspects are then in the possession of the person he has accosted. . . . Before an officer places a hand on the person of a citizen in search of anything, he must have constitutionally adequate, reasonable grounds for doing so. In the case of the self-protective search for weapons, he must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous.[15]

So long as an officer

has reason to believe that the suspect is armed and dangerous, he may conduct a weapons search limited in scope to this protective purpose. The question is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety was in danger. He is justified if, from the circumstances, he reasonably inferred that the individual was armed and dangerous.[16]

Here, the trial court did not err as a matter of law in concluding that Investigator Stamey was justified in believing that his safety was at risk based on the circumstances, including that the officers were searching the house to execute an arrest warrant for a resident thereof, suspicion of drug activity at the house had been reported by neighbors, and Jones, who was sitting up in bed, failed to comply with Stamey's repeated commands that he display his hands, which were obscured under the covers.[17]

3. Finally, Jones contends that the "plain feel" doctrine did not support the officer's search of his pockets. This enumeration presents no basis for reversal.

Under the plain feel doctrine,

if a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized

---

[15] (Citations and punctuation omitted.) *Hodges v. State*, 217 Ga. App. 806, 808 (2) (460 SE2d 89) (1995).

[16] (Citation and punctuation omitted.) Id.

[17] See *O'Quinn v. State*, 303 Ga. App. 657, 659 (695 SE2d 60) (2010); *Vaughn v. State*, 247 Ga. App. 368, 369-370 (1) (543 SE2d 429) (2000) (physical precedent only); *Hodges*, 217 Ga. App. at 808 (2). Compare *State v. Varner*, 239 Ga. App. 347 (521 SE2d 247) (1999) (affirming the trial court's finding that officer lacked probable cause to effect a patdown of a handcuffed individual on the basis of officer safety).

by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context.[18]

Here, Stamey, an experienced narcotics investigator, testified that when he conducted the patdown of Jones's pockets, he felt a small, plastic baggie containing small objects; when he asked Jones what it was, Jones twice replied that he did not know. Based on his training and experience, Stamey believed that the object was a baggie containing narcotics. Stamey also felt "a hard cylinder[-]shaped object in [Jones's] pocket with a round[,] bulb[-]shaped end, which . . . [the officer] knew right away . . . was a methamphetamine pipe." Stamey had felt similar items during more than 25 previous patdowns.

It was unnecessary for the officer to conclusively identify what type of drug [Jones] was carrying in order for the plain feel doctrine to make the seizure of the contraband lawful. Under the plain feel doctrine, the officer was entitled to seize the item and the evidence was properly admitted. He was not compelled to ignore what was apparent to him upon feeling the object and to walk away instead.[19]

Under these circumstances, we conclude that the trial court did not err in determining that the seizure of the items in Jones's pockets was lawful.[20]

*Judgment affirmed. Ellington, C. J., and Miller, J., concur.*

DECIDED FEBRUARY 21, 2012.

*William A. McQueen, John M. Petty, Jr.*, for appellant.
*Layla H. Zon, District Attorney, Erle J. Newton III, Marie E. Greene, Assistant District Attorneys*, for appellee.

---

[18] *Holmes v. State*, 267 Ga. App. 651, 653 (601 SE2d 134) (2004), quoting *Minnesota v. Dickerson*, 508 U. S. 366, 375-376 (II) (B) (113 SC 2130, 124 LE2d 334) (1993).

[19] (Citation and punctuation omitted.) *Holmes*, 267 Ga. App. at 653-654.

[20] See id. at 654; *Dunn v. State*, 289 Ga. App. 585, 586-587 (1) (b) (657 SE2d 649) (2008); *Harris v. State*, 239 Ga. App. 537, 539 (1) (521 SE2d 462) (1999).