**WHOLE COURT**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**November 20, 2015**

# In the Court of Appeals of Georgia

A15A0887. MAY v. THE STATE.

McMILLIAN, Judge.

Following a stipulated bench trial, Rocky Eugene May, Jr. was convicted of possession of methamphetamine and sentenced to three years on probation. May appeals, contending that the trial court erred by denying his motion to suppress evidence seized when police officers responded to a domestic disturbance call at his residence. We affirm.

In *Hughes v. State*, 296 Ga. 744 (770 SE2d 636) (2015), our Supreme Court explained what standard of review appellate courts should apply when reviewing the grant or denial of a motion to suppress. As an overarching principle, "[w]hen the facts material to a motion to suppress are disputed, it generally is for the trial judge to

resolve those disputes and determine the material facts." Id. at 746 (1). From this principle, the Court identified three corollaries:

> First, an appellate court generally must accept those findings unless they are clearly erroneous. Second, an appellate court must construe the evidentiary record in the light most favorable to the factual findings and judgment of the trial court. And third, an appellate court generally must limit its consideration of the disputed facts to those expressly found by the trial court.

(Citations omitted.) Id. Related to these corollaries, the Court also noted that "less deference to the trial court is owed to the extent that material facts definitively can be ascertained exclusively by reference to evidence that is uncontradicted and presents no questions of credibility." Id. at n.5 (citing case involving material facts that could be discerned from a video recording). See also *State v. Allen*, No. S14G1765, 2015 WL 6629769, at *1 (1) (a) (Ga. Nov. 2, 2015).

The only witness at the hearing on the motion to suppress was a sergeant with the Walton County Sheriff's Office who conducted the search during which the contested evidence was seized. The sergeant's testimony, construed in favor of the trial court's factual findings, showed that on July 18, 2013, he responded to a domestic disturbance call at May's residence. When he arrived, he told May, who was

2

standing on the front porch, that he was responding to a domestic call. May explained that he and his girlfriend had gotten into a dispute over a set of car keys and that she had already left the residence. When a second officer arrived, he requested May's consent to walk through the residence to make sure that May's girlfriend was not inside. May agreed, and the second officer conducted the search while the sergeant remained on the porch with May.

While inside the house, the second officer observed a clear, glass pipe, which the sergeant recognized as a pipe used to smoke methamphetamine. After he observed the pipe, the sergeant thought that he might be dealing with someone who could be under the influence of methamphetamine and advised May that he was going to do a pat-down for the safety of both officers. The sergeant testified that during the pat-down, he felt a "little small bulge in [May's] front, right pocket." He further testified, "I could tell as I manipulated it with my open hand that it was . . . some sort of baggie and it had some sort of hard substance in it, crystal substance. In my training and past experience, I knew that was probably going to be contraband, that it was going to be methamphetamine." The State then asked, "So as soon as you began the pat-down, you immediately realized that it was some type of drug or baggie?" The sergeant responded, "Controlled substance, yes, sir." The sergeant asked May if he had any

3

methamphetamine on him, and when May said no, the sergeant reached into May's pocket and pulled out a clear plastic bag that contained less than one gram of methamphetamine. May was arrested and subsequently charged with possession of methamphetamine.

May moved to suppress the evidence obtained from the search of his person and his residence.[1] The trial court denied the motion, ruling that the officer was entitled to conduct a pat-down for weapons for the officers' safety based on the court's determination that (1) "the officers were called to the scene because of a potentially violent, domestic dispute," and (2) the first officer had "testified that in his experience those under the influence of methamphetamine are volatile and potentially dangerous." The court also ruled that the officer was entitled to remove the baggie from May's pocket pursuant to the "plain feel" doctrine. May was subsequently convicted of possession of methamphetamine following a bench trial.

On appeal, May contends that: (1) the pat-down was not justified and (2) the sergeant improperly seized the contraband pursuant to the "plain feel" doctrine.[2]

---

[1] However, at the motion hearing, May did not challenge the seizure of the glass pipe taken from his residence.

[2] The "plain feel" doctrine is a corollary to the "plain view" doctrine as set out in *Minnesota v. Dickerson*, 508 U.S. 366 (113 SCt 2130, 124 LE2d 334) (1993). *State*

1. "Under *Terry v. Ohio* [392 U.S. 1 (88 SCt 1868, 20 LE2d 889) (1968)], a law enforcement officer, for his own protection and safety, may conduct a [pat-down] to find weapons that he reasonably believes or suspects are then in the possession of the person he has accosted." *Jones v. State*, 314 Ga. App. 247, 250-51 (2) (723 SE2d 697) (2012). But in order to conduct such a search, the officer first "must have constitutionally adequate, reasonable grounds for doing so." (Citation omitted.) Id. at 251 (2). Therefore, "[s]o long as the officer . . . has reason to believe that the suspect is armed and dangerous, he may conduct a weapons search limited in scope to this protective purpose." (Citation and punctuation omitted.) *Thompson v. State*, 230 Ga. App. 131, 133 (495 SE2d 607) (1998). "[A]n officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." (Citation and punctuation omitted.) *Mwangi v. State*, 316 Ga. App. 52, 56 (1) (b) (728 SE2d 729) (2012).

In similar circumstances, we have held that investigating the report of a domestic violence situation supported an officer's reasonable belief that the suspect was a safety concern. See *Lester v. State*, 287 Ga. App. 363, 365 (651 SE2d 766)

*v. Cosby*, 302 Ga. App. 204, 205 (690 SE2d 519) (2010).

5

(2007). In addition, in this case, the investigating officer, who was experienced and trained in narcotics detection, found a clear pipe in plain view on a table, which the officer believed had been used to smoke methamphetamine. We have found that suspicion of drug activity is a factor for a reasonable officer to believe that his safety was at risk. *Jones*, 314 Ga. App. at 251 (2). And the sergeant testified that in his experience, persons under the influence of methamphetamine are volatile and dangerous. Accordingly, we discern no error in the trial court's determination that the pat-down was justified.

2. Turning to the issue of whether the seizure of the contraband was allowed under the plain feel doctrine, the law is well established that "[i]f a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons." *Minnesota v. Dickerson*, 508 U.S. 366, 375 (II) (B) (113 SCt 2130, 124 LE2d 334) (1993). Applying this doctrine, the trial court found that "[b]ased on [the sergeant's] testimony, the item's contour and mass, without being otherwise manipulated, made its identity as contraband immediately apparent to him given his training and expertise."

6

As previously noted, the State asked the sergeant on direct whether as soon as he began the pat-down, he "immediately realized" that the object in May's pocket was "some type of drug or baggie," to which the officer responded, "Controlled substance, yes, sir." May did not object to this question as leading or otherwise, and thus the trial court was authorized to rely on the sergeant's testimony in this regard. May's counsel further explored the specifics of the search during cross-examination, as did the State on re-direct. Although it is true that the sergeant used the word "manipulate" at one point in his testimony, we do not believe that his use of that word negates his other testimony that he immediately identified the object as contraband. Moreover, during cross-examination, the sergeant explained that he might have used the word "manipulate" incorrectly and stood up and showed the trial court how he performed the pat-down.

Under *Hughes*, this Court must accept the trial court's factual findings unless clearly erroneous, and we must construe the evidentiary record in the light most favorable to the factual findings and judgment of the trial court. Based on that standard of review, we find ample evidence to support the trial court's determination that the sergeant did not manipulate the contraband and that he immediately recognized it as such upon putting pressure on the area of May's front pants pocket.

Specifically, the trial court was able to view and assess how the sergeant demonstrated the pat-down. Since the trial judge had the benefit of observing this demonstration, and we do not, we must defer to the judge's implicit finding that the sergeant's demonstration provided credible support for his earlier testimony that he immediately identified the object as contraband. See *Nelson v. State*, 317 Ga. App. 527, 532, n.5 (731 SE2d 770) (2012).

Accordingly, we affirm the trial court's denial of the motion to suppress.

*Judgment affirmed. Doyle, C. J., Andrews, P .J., Boggs and Ray, JJ., concur. Barnes, P. J., and Phipps, P. J., dissent.*

A15A0887. MAY v. THE STATE.

BARNES, Presiding Judge, dissenting.

I disagree with the majority's decision to affirm the trial court's finding that the officer in this case was entitled to reach into May's pocket and pull out contraband after ostensibly patting him down for weapons. Therefore, I respectfully dissent from the majority opinion.

"The right of the people to be secure in their persons ... against unreasonable searches and seizures, shall not be violated." U. S. Constitution, Fourth Amendment. That right is echoed in the Georgia Constitution, Ga. Const. of 1983, Art. I, Sec. I, Par. XIII. Our judicial system has sought to clarify the conditions under which governmental intrusion is allowed into our homes and our persons and when it is not. We have defined the three tiers of police-citizen encounters, and within those tiers, we have outlined the conditions under which an officer may lawfully put his hands on a citizen, absent a warrant or exigent circumstances. "[T]o proceed from a stop to a frisk, the police officer must reasonably suspect that the person stopped is armed

and dangerous." *Arizona v. Johnson*, 555 U.S. 323, 326-27 (129 SCt 781, 172 LE2d 694) (2009). If the officer feels an object whose contour or mass makes its identity apparent as a weapon or contraband, "a warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context." *Minnesota v. Dickerson*, 508 U.S. 366, 375-76 (113 SCt 2130, 124 LE2d 334) (1993).

The key is whether the incriminating character of the object in the suspect's clothes was immediately apparent to the officer. In *Dickerson*, the Court agreed with the Minnesota Supreme Court's conclusion that the police officer "overstepped the bounds of the 'strictly circumscribed' search for weapons allowed under *Terry" v. Ohio*, 392 U.S. 1, 26 (88 SCt 1868, 20 LE2d 889) (1968), when "the officer determined that the lump [of cocaine] was contraband only after squeezing, sliding and otherwise manipulating the contents of the defendant's pocket — a pocket which the officer already knew contained no weapon." (Citation and punctuation omitted.) *Dickerson*, 508 U.S. at 378 (III).

As in *Dickerson*, in this case, the officer's testimony at the motions hearing establishes that he did not immediately identify the small amount of methamphetamine in May's pocket when he patted May down for weapons. The trial court's finding otherwise — that "the item's contour and mass, without being

otherwise manipulated, made its identity as contraband immediate apparent to [the officer] given his training and expertise" — is simply not supported by the officer's testimony and the stipulations of fact agreed to by the prosecution and defense.

The parties stipulated that the amount of methamphetamine in May's pocket "weighed less than one gram," and I take judicial notice of the fact that an ounce contains 28 grams. The officer testified that he felt "a little small bulge in [May's] right front pocket" and could tell as he "manipulated" the bulge with his open hand that it was a baggie with a hard substance in it. That is not a seizure supported by the "plain feel" doctrine and was not authorized by our Federal or Georgia Constitution.

The rule of law applies equally to the State and the defendant in a criminal case, and affirming a conviction for possession of a controlled substance under these circumstances erodes public trust.

> Public confidence in our system of justice is of utmost importance. The uniform application of established rules of law both within and outside the context of criminal trial proceedings engenders not only the public's faith and trust in our system of justice, but also respect for and cooperation with the law.

*State v. Thackston*, 289 Ga. 412, 419 (716 SE2d 517) (2011) (Benham, J., dissenting in part and concurring in part).

3

For these reasons, I respectfully dissent from the majority opinion affirming this conviction.

I am authorized to state that Presiding Judge Phipps joins in this opinion.