## S02A0034. MEADOWS v. SETTLES.

(561 SE2d 105)

HUNSTEIN, Justice.

This case arises out of the grant of habeas corpus relief to Phillip Settles. Settles was serving a ten year probated sentence for a conviction of cruelty to a child when a petition to revoke his probation was filed. The record reflects that at the revocation hearing, Settles stipulated to violating the terms of his probation after acknowledging that he was doing so without being threatened by anyone or promised anything. The record is clear, however, that this stipulation was made based upon the mistaken belief, shared by Settles, his probation officer and the trial judge, that the balance remaining on the sentence Settles had to serve was only two years and a few months. The actual balance remaining was over six years. Based on this misunderstanding, the probation officer recommended and the court agreed to revoke the balance of Settles' sentence. Settles thereafter sought habeas relief which was granted on the sole basis that because Settles did not knowingly, intelligently and voluntarily stipulate to the revocation of six years (or the balance) of his probation, it would be manifestly unfair and unjust to deny Settles' writ. Warden Tydus Meadows appeals from the grant of the writ.

1. We find no merit in the State's contention that the court improperly granted relief on a basis that was not raised and to which the State had no opportunity to respond. A review of the habeas transcript reveals that the issue whether Settles knowingly, intelligently and voluntarily stipulated to the revocation of six years of his probation was the primary issue raised and discussed by the court, Settles and counsel for the State. The record further reveals that ample opportunity was presented to the State to respond to that issue both at the hearing and prior to entry of the habeas court's ruling.

2. The State contends the habeas court improperly imported the rule of *Boykin v. Alabama*, 395 U. S. 238 (89 SC 1709, 23 LE2d 274) (1969) into a probation revocation hearing.

> The protections of *Boykin* . . . are designed to provide objective and easily reviewable evidence that guilty pleas have been made voluntarily and knowingly. In *Boykin*, the Supreme Court held that it was a violation of due process for a state trial court to accept a guilty plea without an affirmative showing that the plea was voluntary and intelligent. It was ruled impermissible to presume from a silent record the waivers of three rights forfeited by a guilty plea — the Sixth Amendment rights to a jury trial and to confront one's accusers, and the Fifth Amendment privilege against compulsory self-incrimination. [Cit.]

*United States v. Segal*, 549 F2d 1293, 1295 (II) (9th Cir. 1977). See also *Britt v. Smith*, 274 Ga. 611 (556 SE2d 435) (2001). The State argues that Settles at his probation revocation hearing was not entitled to receive the benefits of the *Boykin* protections when he admitted violations of the terms of his probation. We agree with the State that "admitting to probation violations at a revocation hearing is not the equivalent of pleading guilty to a crime. The admissions are 'not made in the course of a criminal trial and do not give rise to a different statutory offense or to an increase in punishment on the underlying conviction.' [Cit.]" *United States v. Rapert*, 813 F2d 182, 185 (8th Cir. 1987). Rather, the United States Supreme Court has recognized the distinction between revocation proceedings and criminal prosecutions and has declined to attach to revocation proceedings "the full panoply of procedural safeguards associated with a criminal trial." *Black v. Romano*, 471 U. S. 606, 613 (105 SC 2254, 85 LE2d 636) (1985). Accord *United States v. Pelensky*, 129 F3d 63, 68 (2nd Cir. 1997) (" 'most of the fundamental constitutional procedural protections that are normally applicable to a criminal prosecution are not required for supervised-release proceedings as a matter of constitutional law' "). Because a probationer has "no right to a jury trial, an attenuated confrontation right, and a limited self-incrimination privilege," the three rights addressed in *Boykin, United States v. Rapert*, supra, 813 F2d at 185; see also *United States v. Segal*, supra, 549 F2d at 1298-1299 (IV) (B), the Federal courts that have addressed the issue have concluded that "due process of law does not require a court to elicit a formal waiver from a defendant who has admitted to violating the terms of probation." *United States v. Pelensky*, supra, 129 F3d at 68. The "theoretical justifications for the due process safeguards assured in *Boykin v. Alabama* do not manifest themselves at the probation revocation hearing." *United States v. Rapert*, supra, 813 F2d at 185.

Another, more practical, reason for not applying the procedural protections in *Boykin* has been set forth by the Second Circuit Court of Appeals.

> Not only is a voluntariness colloquy not required by . . . *Boykin* before a court may accept a defendant's admission of supervised release [or probation] violations, but such a formal colloquy would be ill suited to the context of supervised release [or probation] proceedings. In contrast to the adversarial setting that characterizes the offering of a guilty plea, a revocation of supervised release proceeding features the involvement of the probation officer, who is responsible for representing the defendant's best interests to the greatest extent possible consistent with the welfare of the commu-

nity. [Cit.] The responsibilities of the probation officer "can best be carried out in a less adversary and contentious atmosphere." [Cit.] "To superimpose formalistic procedures" . . . however much it may be sound practice for judges to elicit *some* indication of voluntariness for the record, "is neither required by due process nor necessarily conducive to a more effective accomplishment of the goals of probation," [cit.] or supervised release.

*United States v. Pelensky*, supra, 129 F3d at 68.

We find the Federal courts' reasoning persuasive and accordingly hold that there is no constitutional requirement that a court engage in the *Boykin* voluntariness colloquy before accepting a probationer's admission of probation violations.

3. Contrary to the State's contention, this case is not resolved by our holding in Division 2, supra, that a revocation court is not required to elicit a formal waiver from a defendant who has admitted to violating the terms of probation. The United States Supreme Court has recognized that "the loss of liberty entailed [by a probation revocation proceeding] is a serious deprivation requiring that the [probationer] be accorded due process." *Gagnon v. Scarpelli*, 411 U. S. 778, 781 (II) (93 SC 1756, 36 LE2d 656) (1973).[1]

Although such liberty is not the equivalent of that enjoyed by an ordinary citizen, it is greater than that enjoyed by one incarcerated for a crime. However this liberty may be restricted, it may not be terminated without the rudiments of procedural due process. [Cit.] What is at stake is not simply technical legal notions of what steps must be followed in a revocation hearing. Instead, there is involved "a profound attitude of fairness between man and man, and more particularly between the individual and government. . . ." [Cit.]

*Preston v. Piggman*, 496 F2d 270, 273 (6th Cir. 1974).

Fundamental fairness is "the touchstone of due process." *Gagnon*, supra, 411 U. S. at 790 (III). While the landmark cases of *Gagnon*, supra, and *Morrissey v. Brewer*, 408 U. S. 471 (92 SC 2593, 33 LE2d 484) (1972), "deal specifically with the right of a probationer to have a hearing, it is clear that the Fourteenth Amendment due process provisions contemplate that any such hearing must comport with principles of fundamental fairness. [Cit.]" *United States v. Tyler*,

---

[1] The United States Supreme Court recognized in *Gagnon v. Scarpelli*, supra, 411 U. S. at 782, n. 4, that after *Morrissey v. Brewer*, 408 U. S. 471 (92 SC 2593, 33 LE2d 484) (1972), "a probationer can no longer be denied due process."

605 F2d 851, 853 (5th Cir. 1979). See also Thirtieth Annual Review of Criminal Procedure: Introduction and Guide for Users: IV. Sentencing: Probation, 89 Geo. L. J. 1713, 1726-1727 (2001) ("[d]espite the absence of some constitutional protections, due process safeguards apply during probation revocation hearings. Due process requires that revocation hearings be conducted according to Fourteenth Amendment principles of fundamental fairness." (Footnotes omitted)). The concern for fundamental fairness in probation revocation proceedings underscores the U. S. Supreme Court's case law in this area. E.g., *Black v. Romano*, supra, 471 U. S. at 610-611; *Bearden v. Georgia*, 461 U. S. 660, 668-669 (103 SC 2064, 76 LE2d 221) (1983). In light of the holding in these cases, the "revoking court's exercise of discretion must now be tempered with a proper regard for the due process rights of the probationer. This, of course, must be taken into account in reviewing the revocation decision." *United States v. Dane*, 570 F2d 840, 843 (9th Cir. 1977). Accordingly, Federal courts and many of our sister states have recognized that due process requires that revocation proceedings be conducted in a fundamentally fair manner. E.g., *United States v. Reber*, 876 F2d 81 (II) (10th Cir. 1989); *United States v. Hamilton*, 708 F2d 1412, 1414 (9th Cir. 1983); *United States v. Tyler*, supra, 605 F2d at 853; *United States v. Dane*, supra, 570 F2d at 843; *Michigan v. Belanger*, 576 NW2d 703, 707 (Mich. App. 1998); *Baldwin v. Maryland*, 598 A2d 475 (III) (Md. App. 1991); *Montana v. Kingery*, 779 P2d 495, 499 (Mont. 1989); *Wright v. Texas*, 640 SW2d 265, 269 (Tex. Crim. App. 1982); *Lockett v. Arkansas*, 611 SW2d 500, 501 (Ark. 1981).

Georgia law has long recognized that a reviewing court is authorized to reverse a probation revocation for an abuse of discretion. E.g., *McRae v. State*, 167 Ga. App. 223 (306 SE2d 358) (1983); *Harper v. State*, 146 Ga. App. 337, 338 (246 SE2d 391) (1978). We now hold that a reviewing court is also authorized to reverse a probation revocation for fundamental unfairness.[2] This holding is not inconsistent with our conclusion in Division 2, supra. Even as it held that the requirements of *Boykin* do not apply to probation revocations, the Second Circuit Court of Appeals recognized that this holding "does not change the fact that a defendant's waiver must actually be knowing and voluntary" in situations where, as here, "there is independent evidence in the record suggesting that the admission of [proba-

---

[2] Probationers may seek an application to appeal from the order revoking his or her probation, see OCGA § 5-6-35 (a) (5), in which case the appellate court is authorized to reverse a probation revocation for fundamental unfairness. In the instant case, the record fails to reflect whether Settles pursued a discretionary appeal. However, no issue of procedural default was raised by the State and accordingly we do not reach that issue here. See *Turpin v. Todd*, 268 Ga. 820 (2) (493 SE2d 900) (1997) (setting forth analysis applicable to determine whether procedural bar to asserting claim on habeas corpus has been overcome).

tion] violations . . . was not knowing and voluntary." *United States v. Pelensky*, supra, 129 F3d at 68, n. 9.[3] We agree that where a probationer carries the burden of adducing independent evidence that reflects that his or her admission of probation violations was not knowing and voluntary, a reviewing court may determine whether fundamental fairness requires the reversal of the probation revocation.

4. Our review of the record reveals that the habeas court correctly recognized that a probationer facing revocation is not entitled to the full panoply of constitutional due process rights which attach to an accused in a criminal prosecution.[4] See *Gagnon*, supra, 411 U. S. at 781 (II). Although the habeas court referenced *Boykin* and its requirement that guilty pleas be knowingly, voluntarily, and intelligently made, the clear focus of the court was not on the procedural requirement that the colloquy be elicited on the record. Rather, the habeas court focused on the fundamental fairness of the probation proceeding and the effect the misinformation regarding the balance remaining on Settles' sentence had on Settles' decision to admit to violating the terms of his probation. Citing the language in *Boykin* that a sentencing court, when accepting a guilty plea, must "canvass[ ] the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence[s]," id., 395 U. S. at 244, the habeas court stressed that "[m]ost importantly, a probationer needs to fully, intelligently and correctly understand the amount of time being revoked in a stipulated hearing." In finding that Settles did not knowingly, intelligently and voluntarily stipulate to the revocation of six years (or the balance) of his probation, the habeas court specifically found that "[u]nder the facts of this case, it would be manifestly unfair and unjust to deny the Petitioner's writ."

It is thus apparent that the habeas court properly reviewed Settles' probation revocation for fundamental unfairness. The court had before it independent evidence adduced by Settles regarding the incorrect information provided to Settles and the revocation court by the misinformed probation officer and determined that Settles had proven that his admission of probation violations was not knowing and voluntary.[5] After reviewing the record before the habeas court,

---

[3] That court specifically noted its holding did not address such a situation because the facts in the case before it did not contain evidence of an unknowing and involuntary admission. Id.

[4] Thus, for an example, a probationer in a straightforward revocation proceeding like the one involved in this case would not be entitled to appointed counsel. *Vaughn v. Rutledge*, 265 Ga. 773 (1) (462 SE2d 132) (1995).

[5] We note that the misunderstanding regarding the balance of time remaining to be served on Settles' sentence fundamentally affected not only the factual stage of the revocation proceeding, i.e., Settles' decision to admit he violated the conditions of his probation, but

we find no abuse of the habeas court's discretion. Accordingly, we affirm the court's grant of habeas relief to Settles.

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 11, 2002.

*Thurbert E. Baker, Attorney General, Adam M. Hames, Assistant Attorney General,* for appellant.

*Roger A. Baruch,* for appellee.

*James C. Bonner, Jr.,* amicus curiae.

---

also the second stage of the proceeding, i.e., the revocation court's consideration regarding what action was appropriate in light of Settles' violation. The record is clear that the revocation court was operating under a mistake of fact that only two years and a few months remained on Settles' sentence when it concluded that revoking the balance of that sentence was the appropriate response to Settles' probation violation. It thus appears that both Settles' decision to admit the probation violations and the trial court's decision as to the appropriate penalty for the violations were based on misinformation that fundamentally affected both stages of the revocation proceeding in a manner which undermined its fairness.