**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**GOBEIL, P. J. and LAND, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**August 1, 2022**

# In the Court of Appeals of Georgia

A21A1585. DAVE v. THE STATE.

MCFADDEN, Presiding Judge.

After pleading guilty to a felony, Treshia Vernetta Dave was referred to a mental health accountability court program in the superior court. The superior court subsequently terminated her participation in the program, entered a judgment of conviction, and imposed a sentence that included a term of confinement. Before taking those actions, the superior court held a hearing that neither Dave nor her plea counsel attended. Among other things, Dave argues that her right to due process was violated because she was not given notice of that hearing. We agree and find that this was reversible error. So we do not reach Dave's other arguments.

1. *Procedural history.*

The record shows that on November 6, 2019, Dave, while represented by counsel, entered her guilty plea and the superior court admitted her to the mental health court program. Dave signed a mental health court contract in which she agreed to comply with various requirements of the program. The superior court did not enter a judgment of conviction or sentence at that time. Instead, Dave's mental health court contract provided that if she was terminated from the program for noncompliance, she would not be allowed to withdraw her plea and instead would be sentenced to five years, with two years to be served in confinement.

On February 18, 2021, Dave's mental health court case manager filed with the superior court a "Notice of Team Decision to Seek Termination." That filing alleged that Dave had violated numerous conditions of her mental health court participation, including "absconding from [mental health court] supervision[.]" It set a time and place for a superior court hearing on the issue of terminating Dave from the mental health court program. And it stated that the notice had been mailed to Dave, return receipt requested, at her last known address. This filing did not indicate that it had been served on Dave's plea counsel.

The termination hearing occurred on February 25, 2021. Neither Dave nor her plea counsel attended, and Dave's case manager informed the superior court that the

notice mailed to Dave had been returned as undeliverable. At the hearing, the state presented evidence that Dave had violated several conditions of her mental health court contract.

On March 1, 2021, the superior court issued an order terminating Dave from the program. Among other things, the superior court stated in the order that Dave was not represented by counsel and acknowledged that the notice mailed to her had been returned as undeliverable. The superior court found that the state had proved the alleged program violations. The superior court noted that she "[did] not always terminate from the program" but that she was terminating Dave's participation based on her violations and on the fact that Dave had "absconded from the program" and "had not shown up for the hearing for which she has had notice[.]" On March 5, 2021, the superior court entered a judgment of conviction and imposed upon Dave a five-year sentence, with two years served in confinement. Dave filed a notice of appeal on March 31, 2021, represented by new counsel. The next day, a notice was filed with the superior court substituting Dave's new counsel for her plea counsel.

On appeal, Dave argues that her constitutional rights were violated in several respects. The state asserts in response that the case presents issues of first impression. We transferred this appeal to our Supreme Court for that Court to determine whether

3

to exercise jurisdiction over the case. The Supreme Court returned the case to us after concluding that Dave's arguments "do not involve a novel construction of any constitutional provision" and "require the mere application of well settled constitutional principles to the facts of her case[.]"

2. *Mental health courts under OCGA § 15-1-16.*

Under OCGA § 15-1-16, "any court that has jurisdiction over a criminal case in which a defendant has a mental illness or developmental disability, or a co-occurring mental illness and substance abuse disorder, may establish a mental health court division to provide an alternative to the traditional judicial system for disposition of such cases." OCGA § 15-1-16 (b) (1). A court may refer a criminal case to the mental health court if the defendant "suffers from a mental illness or developmental disability, or a co-occurring mental illness and substance abuse disorder, and the defendant meets the eligibility criterial for the mental health court division[.]" OCGA § 15-1-16 (b) (2).

In this case, the superior court referred Dave to the mental health court "[p]rior to the entry of the sentence[.]" OCGA § 15-1-16 (b) (2) (A). The statute also permits a trial court to refer a defendant to a mental health court "[a]s part of a sentence in a

case[,]" OCGA § 15-1-16 (b) (2) (B), or "[u]pon consideration of a petition to revoke probation." OCGA § 15-1-16 (b) (2) (C).

The appellate record does not specify the condition that qualified Dave for referral to the mental health court. Although Dave describes her qualifying condition in her appellate brief, "[w]e cannot consider facts asserted in briefs that are not a part of the record before us." *Wachovia Ins. Svcs. v. Fallon*, 299 Ga. App. 440, 446 (3) (a) n. 3 (682 SE2d 657) (2009).

But to qualify, Dave was required to have a mental illness, a developmental disability, or a mental illness co-occurring with a substance abuse disorder. OCGA § 15-1-16 (b) (2). A mental illness is defined as "a disorder of thought or mood which significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life." OCGA § 37-1-1 (12). See OCGA § 15-1-16 (a) (2) (the term "mental illness," as used in the Code section addressing mental health court divisions, "shall have the same meaning as set forth in Code Section 37-1-1"). A developmental disability is defined as

> a severe, chronic disability of an individual that: (A) Is attributable to a significant intellectual disability, or any combination of a significant intellectual disability and physical impairments; (B) Is manifested before the individual attains age 22; (C) Is likely to continue indefinitely; (D)

5

Results in substantial functional limitations in three or more of the following areas of major life activities: (i) Self-care; (ii) Receptive and expressive language; (iii) Learning; (iv) Mobility; (v) Self-direction; and (vi) Capacity for independent living; and (E) Reflects the person's need for a combination and sequence of special, interdisciplinary, or generic services, individualized supports, or other forms of assistance which are of lifelong or extended duration and are individually planned and coordinated.

OCGA § 37-1-1 (8). See OCGA § 15-1-16 (a) (1) (the term "developmental disability," as used in the Code section addressing mental health court divisions, "shall have the same meaning as set forth in Code Section 37-1-1").

Under the statute, "[e]ach mental health court division shall establish written criteria that define the successful completion of the mental health court division program." OCGA § 15-1-16 (c) (1). "If the mental health court division participant successfully completes the mental health court division program prior to the entry of judgment, the case against the mental health court division participant may be dismissed by the prosecuting attorney." OCGA § 15-1-16 (c) (2).

The statute also contemplates that a participant may be terminated from a mental health court program. See OCGA § 15-1-16 (d) (providing that if a participant "is terminated from the mental health court division, the reasons for the . . .

termination may be considered in sanctioning, sentencing, or otherwise disposing of the participant's case"). But OCGA § 15-1-16 does not set forth any specific procedures for termination. Instead, it tasks the Council of Accountability Court Judges of Georgia with establishing standards and practices for mental health court divisions, and it requires mental health court divisions to "adopt policies and practices that are consistent with the standards and practices published by the Council of Accountability Court Judges of Georgia." OCGA § 15-1-16 (b) (4) (A).

3. *Due process rights to notice of and an opportunity to be heard at the termination hearing.*

Dave argues that we should reverse the termination order, judgment of conviction, and sentence because the superior court violated her right to due process by terminating her participation in the mental health court program without providing her with sufficient notice of the hearing and an opportunity to be heard on the state's termination petition. We agree.

In accordance with OCGA § 15-1-16 (b) (4) (A), the Council of Accountability Court Judges of Georgia has promulgated standards that address termination from a mental health court division. See Adult Mental Health Court Standards, § III, ¶¶ 2.12 - 2.15, cacj.georgia.gov/standards-certification/cajc-standards-accountability-courts

7

(retrieved June 27, 2022). Among other things, those standards require "notice, a hearing on the record, and a fair procedure" for a participant to be terminated from a mental health court program. Id. at ¶ 2.12. And they provide that "[t]ermination hearings conducted for [mental health court] participants shall include all due process rights afforded to any offender serving a probated sentence under the supervision of the Georgia Department of Community Supervision."[1] Id. at ¶ 2.14.

"The United States Supreme Court has recognized that 'the loss of liberty entailed by a probation revocation proceeding is a serious deprivation requiring that the probationer be accorded due process.' *Gagnon v. Scarpelli*, 411 U. S. 778, 781 (II) (93 SCt 1756, 36 LE2d 656) (1973)." *Meadows v. Settles*, 274 Ga. 858, 860 (3)

---

[1] This does not mean that an accountability court termination proceeding is analogous to a probation revocation hearing in every respect or under every set of circumstances. Compare *Wilkinson v. State*, 283 Ga. App. 213 (1) (641 SE2d 189) (2006) (finding termination of a defendant's participation in a drug court program under OCGA § 16-3-2 to be analogous to the revocation of probation or first offender status for the purpose of determining the state's burden of proof) with *Oliver v. State*, 305 Ga. App. 779 n. 1 (700 SE2d 861) (2010) (holding that an order enforcing the portion of a sentence that had been suspended while a defendant was in a drug treatment program was not the equivalent of a probation revocation and so was not subject to the discretionary appeal requirements under OCGA § 5-6-35 (a) (5)). We question the extent to which termination proceedings may be analogized to probation revocation proceedings in cases such as this, where the superior court referred the defendant to an accountability court without first entering a judgment of conviction or sentence. But we do not resolve that issue today.

8

(561 SE2d 105) (2002) (punctuation and footnote omitted). "[T]he requirements of due process are flexible and call for such procedural protections as the particular situation demands." *State v. Huffman*, 351 Ga. App. 853, 855 (833 SE2d 552) (2019) (citations and punctuation omitted). A defendant must have notice and an opportunity to be heard on the issue of probation revocation, *Johnson v. Boyington*, 273 Ga. 420, 421 (541 SE2d 355) (2001), and "any such hearing must comport with principles of fundamental fairness." *Meadows*, supra (citation and punctuation omitted). To be sufficient, the notice of the hearing must, among other things, inform the defendant of the time and place of the probation revocation hearing. *Ponder v. State*, 341 Ga. App. 276, 278 (1) (800 SE2d 19) (2017). We apply these due process principles here, reviewing de novo the question of whether the proceeding accorded Dave due process. See *Huffman*, 351 Ga. App. at 854.

The termination of Dave's participation in the mental health court program resulted in her loss of liberty; she was sentenced to a term that included confinement. So Dave had a right to due process of law with regard to the hearing that included, at the least, the right to notice of the time and place of the termination hearing. *Meadows*, 274 Ga. at 860 (3); *Ponder*, 341 Ga. App. at 278 (1).

Although there is no evidence that Dave received actual notice of the hearing, the state argues that Dave was properly served with written notice because it was mailed to her last known address. But Dave was represented by counsel. We do not decide whether this would have been sufficient notice if she had been pro se. It was insufficient because the law required that the notice be served on Dave's counsel, which did not occur.

Our rules of both criminal and civil procedure require that service of written notice be made upon a party's attorney. In criminal proceedings, "every written notice . . . shall be served upon each party[,]" OCGA § 17-1-1 (a), and "[w]here service is required to be made, the service *shall* be made upon the party's attorney unless service upon the party himself is ordered by the court." OCGA § 17-1-1 (b) (1) (emphasis supplied). The same is true in civil proceedings. See OCGA § 9-11-5 (a) & (b).[2]

---

[2] Because these criminal and civil procedural rules are functionally the same, we do not address the state's argument that we must view Dave's termination hearing as a civil rather than criminal proceeding. But see generally *United States v. Haymond*, __ U. S. __, __ (III) (C) (139 SCt 2369, 204 LE2d 897) (2019) (plurality opinion) (a criminal prosecution continues "until a final sentence is imposed"); *Betterman v. Montana*, 578 U. S. 437, 441 (II) (136 SCt 1609, 194 LE2d 723) (2016 (the trial court's imposition of a sentence after a conviction at trial or a guilty plea is the third phase of a criminal proceeding).

Although the superior court stated in the termination order that Dave was not represented by counsel at the time of the termination proceedings, the record does not support that finding. It shows that Dave was represented by counsel on November 6, 2019, when she entered her plea and was referred to the mental health court program and that a notice of substitution of counsel replacing plea counsel was filed on April 1, 2021, over a month after the conclusion of the termination proceedings and the entry of the judgment and sentence against Dave. The record contains no court order permitting plea counsel to withdraw before April 1, 2021, or other support for the superior court's statement that, at the time of the hearing on February 25, 2021, Dave was unrepresented.

The state argues that plea counsel's representation ended when Dave entered her guilty plea and was referred to the mental health court program. But the state does not cite, and we have not found, any authority providing that counsel's representation of a criminal defendant ends when the trial court refers that person to an accountability court but does not enter a judgment of conviction and sentence. Generally, where no judgment of conviction and sentence has been entered, counsel remains counsel of record until the trial court enters an order permitting withdrawal or substitute counsel enters an appearance. See *Dos Santos v. State*, 307 Ga. 151, 154

11

(3) (834 SE2d 733) (2019); *Tolbert v. Toole*, 296 Ga. 357, 362 (3) (767 SE2d 24) (2014).

Both the state and Dave, in their appellate briefs, discuss the rule set forth in *White v. State*, 302 Ga. 315 (806 SE2d 489) (2017), which provides that, "at a minimum, legal representation continues — unless interrupted by entry of an order allowing counsel to withdraw or compliance with the requirements for substitution of counsel — through the end of the term at which a trial court enters a judgment of conviction and sentence on a guilty plea[.]" Id. at 319 (2) (citation omitted). This rule has no application here, where the question is whether Dave had counsel at a time *before* the trial court entered a judgment of conviction and sentence.

For these reasons we conclude that, under the circumstances of this case, plea counsel still represented Dave at the time of the termination hearing and that due process required that Dave's counsel be served with notice of the time and place of the termination hearing in accordance with our rules of criminal (and civil) procedure. Because Dave's counsel was not served with such notice, Dave's due process rights were violated.

To the extent the state argues that Dave waived her due process rights related to the hearing by, in the state's terms, "absconding" from the mental health court's

supervision, we are not persuaded. A criminal defendant must *knowingly* waive the right to notice, see *Hughes v. Hinks*, 349 Ga. 416, 417 (291 SE2d 545) (1982) (holding that a probation revocation proceeding conducted without notice to the probationer violates due process unless the probationer has knowingly waived the right to notice), and nothing in the record shows that Dave knowingly waived that right. Compare *Andrews v. State*, 276 Ga. App. 428, 432-433 (3) (623 SE2d 247) (2005) (holding that a criminal defendant waived a claim of insufficient notice of a hearing because he was nevertheless present at the hearing, where he failed to object). We decline to view Dave's alleged failure to comply the mental health court program requirements as a knowing waiver of her right to have notice of and an opportunity to respond to those allegations at the termination hearing.

And we do not find that the due process violation was harmless. Dave was not notified of the time and place of the termination hearing, and so she had no opportunity to explain her alleged failure to comply with the mental health court program requirements or make any arguments in mitigation based on her mental health condition. From the superior court's statement in her order that she "[did] not always terminate from the program," it appears that, in an appropriate case, the trial

13

court could be persuaded not to terminate a defendant's participation in a mental health court program merely because of noncompliance.

In conclusion, we find that it was fundamentally unfair for the superior court to terminate Dave's participation in the mental health court program without giving Dave notice of the termination hearing and an opportunity to be heard on this issue. "Fundamental fairness is the touchstone of due process. . . . [It] is is clear that the Fourteenth Amendment due process provisions contemplate that [the termination] hearing . . . comport with principles of fundamental fairness." *Meadows*, 274 Ga. at 860 (3) (citations and punctuation omitted) (citations and punctuation omitted). Because it did not, we reverse the superior court's decision to terminate Dave's participation in the mental health court program, as well as the judgment of conviction and sentence predicated on her termination from the program.

4. *Other constitutional claims.*

Given this disposition, we do not address the other alleged constitutional violations that Dave asserts in this appeal.

*Judgment reversed. Gobeil and Land, JJ., concur.*