**SECOND DIVISION**
**MILLER, P. J.,**
**MARKLE and LAND, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 21, 2024**

# In the Court of Appeals of Georgia

A24A0065. TROUPE v. STATE.

LAND, Judge.

In April 2023, Michael Troupe was charged with felony offenses while serving a first offender probated sentence under OCGA § 42-8-60. In addition to pursuing the new charges, the State filed a petition for an adjudication of guilt and resentencing in the first offender case. See OCGA § 42-8-60 (d) (1) and (d) (2) (authorizing trial courts to enter an adjudication of guilt and resentence a first offender probationer who has violated the terms of his probation and/or been convicted of another crime during the period of his first offender sentence). Troupe entered into a negotiated plea with the State to resolve the new charges and their resulting impact on his first offender probation. Specifically, the parties agreed that Troupe would plead guilty to the new

charges and be sentenced to a total of six years to serve plus a term of probation to be determined by the trial court, with that sentence to run concurrently with a six year revocation of his probation in the first offender case.

The trial court considered the parties' agreement and rejected it, as it was entitled to do. At the same time it announced its rejection of the guilty plea, and without the benefit of a full hearing on the petition in the first offender case, the trial court proceeded to resentence Troupe to 25 years to serve in that case. When asked to explain the basis for the resentencing, the trial court unequivocally stated that its decision to resentence Troupe to serve more than four times the amount of time the parties agreed to was based on the fact that Troupe was a first offender who "has admitted his guilt with regard to [the new case] during the course of this hearing." In other words, the trial court used Troupe's rejected plea agreement and its corresponding admission of guilt as the basis for resentencing in the first offender case. The question before us is whether the trial court was authorized to do that. We conclude that it was not and therefore reverse the trial court's sentencing order.

We agree with Troupe that his resentencing was fundamentally unfair under the circumstances of this case, that the trial court erred by using his negotiated plea and

its corresponding admission of guilt as the basis for that resentencing, and that the trial court's order was supported by insufficient evidence. In this regard, the record shows that in April 2021, Troupe pled guilty to one count of making terroristic threats as a lesser-included offense of aggravated assault and one count of a Street Gang Terrorism and Prevention Act violation. Troupe was sentenced as a first offender to two concurrent five-year terms of probation. The trial court's sentencing order specifically noted that "[u]pon violation of the terms of probation . . . the Court may enter an adjudication of guilt and proceed to sentence the Defendant to the maximum sentence as provided by law."

In April 2023, the State filed a petition for an adjudication of guilt and resentencing in the first offender case, alleging that Troupe had committed several new felony offenses in January 2023. The State later amended its petition to allege that Troupe had also committed additional felony offenses in May 2022.

The State entered into a negotiated plea agreement with Troupe to resolve the new charges arising from the May 2022 offenses; if approved by the trial court, this agreement would have also resolved the resentencing petition filed by the State in the

first offender case.[1] The parties' agreement specified that Troupe would plead guilty to the new charges and be sentenced to six years to serve, followed by a term of probation to be determined by the trial court, while at the same time having six years of his probation revoked in the first offender case, with that period of revocation to run concurrently with the six year sentence in the new case. In other words, Troupe agreed to admit his guilt and accept responsibility for the May 2022 offenses in return for a sentence of six years to serve followed by a period of probation to be determined by the trial court. The terms of the plea agreement were recorded on an acknowledgment and waiver-of-rights form, which was signed by Troupe, his counsel, and the State. This form makes it clear that Troupe's guilty plea and corresponding admission of guilt were based entirely on the parties' agreement to resolve these two matters pursuant to the terms described above.

The trial court held a hearing on May 4, 2023, at which Troupe appeared via video conference. At the beginning of the hearing, Troupe's probation officer outlined the basis for the State's position with respect to the first offender case and requested that the trial court revoke the balance of Troupe's probation. While giving the trial

---

[1] This agreement did not seek to resolve the January 2023 charges.

court a summary of the expected evidence, the probation officer stated that two deputies had been subpoenaed to testify at the hearing. These deputies never testified, and no other evidence of Troupe's alleged guilt was admitted for the trial court's consideration.

After hearing from the probation officer, the trial court turned its attention to the parties' plea agreement and conducted a *Boykin*[2] colloquy with Troupe. During this colloquy, Troupe admitted that he had signed the negotiated plea agreement form and understood its contents. The trial court asked the State to provide a factual basis for the new charges, and the State did so. Troupe's counsel did not object to the factual basis for the plea and asked the trial court to accept the "negotiated resolution of this case."

The trial court rejected the plea agreement and announced, without the benefit of a full hearing on the first offender probation matter, that it was resentencing Troupe in that case to 30 years to serve. After being told that this sentence exceeded the statutory maximum for the charges, the trial court proceeded to sentence Troupe to the statutory maximum, 25 years to serve. While the trial court correctly recognized

---

[2] *Boykin v. Alabama*, 395 U. S. 238 (89 SCt 1709, 23 LE2d 74) (1969).

5

that its rejection of the plea agreement meant that Troupe was "without any sort of commitment or admission of guilt in *that case*" and that his "right to a jury trial on *that charge* [was] restored," it nonetheless used that rejected plea agreement and its corresponding admission of guilt as the sole basis for resentencing Troupe in the first offender case. The record shows that when asked for the "factual basis for the resentencing," the trial court responded that the "factual basis is he's a first offender, and [Troupe] has admitted his guilt with regard to [the new charges] during the course of this hearing."

Troupe argues that his resentencing was "fundamentally unfair" under the circumstances of this case, that the trial court erred by using his negotiated plea and its corresponding admission of guilt as the basis for that resentencing, and that the trial court's order was supported by insufficient evidence. We agree.

As a general rule, "[t]his court will not interfere with a [probation] revocation unless there has been a manifest abuse of discretion on the part of the trial court." (Punctuation and footnote omitted.) *Dugger v. State*, 260 Ga. App. 843, 843 (581 SE2d 655) (2003). The same is true of resentencing of first offenders who have violated the terms of their probation. *Wright v. State*, 279 Ga. App. 299, 299 (630 SE2d 774)

(2006) (same standard of review applies in probation revocation and first offender revocation appeals); *Camaron v. State*, 246 Ga. App. 80, 82 (1) (539 SE2d 577) (2000) (resentencing of first offender who has violated terms of probation is "within the sound discretion of the trial court"). However, "the loss of liberty entailed by a probation revocation proceeding [or a resentencing of a first offender probationer] is a serious deprivation requiring that the probationer be accorded due process." (Citation, punctuation, and footnote omitted.) *Meadows v. Settles*, 274 Ga. 858, 860 (3) (561 SE2d 105) (2002).

> Although such liberty is not the equivalent of that enjoyed by an ordinary citizen, it is greater than that enjoyed by one incarcerated for a crime. However this liberty may be restricted, it may not be terminated without the rudiments of procedural due process. What is at stake is not simply technical legal notions of what steps must be followed in a revocation hearing. Instead, there is involved a profound attitude of fairness between man and man, and more particularly between the individual and government.

(Citation and punctuation omitted.) Id. We review de novo the question of whether such a proceeding afforded the defendant due process. *Dave v. State*, 365 Ga. App. 1, 5 (3) (876 SE2d 882) (2022).

"The requirements of due process are flexible and call for such procedural protections as the particular situation demands," (citation and punctuation omitted) *Dave*, 365 Ga. App. at 5 (3), and "[i]t is well-settled that a probationer facing revocation is not entitled to the full panoply of constitutional due process rights which attach to an accused in a criminal prosecution." (Citation and punctuation omitted.) *Murphy v. State*, 370 Ga. App. 738, 746 (2) (899 SE2d 307) (2024). But "where a probationer carries the burden of adducing independent evidence that reflects that his or her admission of probation violations was not knowing and voluntary, a reviewing court may determine whether fundamental fairness requires the reversal of the probation revocation." *Meadows*, 274 Ga. at 862 (3).

The critical fact in this case is that the trial court based its resentencing entirely on Troupe's admissions made in connection with his negotiated guilty plea that was rejected by the trial court and subsequently withdrawn by Troupe.

> "It is well established in Georgia that the end result of a negotiated plea agreement is, in essence, a contract between a defendant and the State. As such, in many circumstances it is appropriate to view the final negotiated plea agreement as a package deal, the terms of which should not be treated in isolation from one another but rather as a cohesive whole."

(Citation and punctuation omitted.) *Arnold v. State*, 352 Ga. App. 777, 780 (835 SE2d 759) (2019). "[A] trial judge has wide discretion to accept or reject a negotiated plea." (Citation and punctuation omitted.) *Torres-Toledo v. State*, 366 Ga. App. 526, 527 (1) (883 SE2d 545) (2023). If, however, a trial court intends to reject a negotiated plea, it is required under Uniform Superior Court Rule 33.10 "to inform the defendant that [he] thus has the right to withdraw [his] plea[,]" with the end result being that the rejected and subsequently withdrawn plea cannot be used against the defendant in the ensuing trial or other judicial proceeding.

Our courts have long held that if a negotiated plea agreement is rejected or withdrawn, any admission of guilt made as part of the agreement cannot be used as evidence against the defendant at trial. See *Corthran v. State*, 268 Ga. 443, 443 (491 SE2d 66) (1997) (videotaped statement made as part of a negotiated plea bargain agreement was inadmissible where guilty plea was later withdrawn); *Williams v. State*, 239 Ga. 327, 327-328 (1) (236 SE2d 672) (1977) (reversing defendant's conviction when he confessed to a crime as part of a later-rejected plea agreement because "a confession induced by the slightest hope of benefit or remotest fear of injury may not be used against a defendant"). For the same reason, such admissions should not be

used against the defendant in a probation revocation or first offender resentencing proceeding. To hold otherwise would be fundamentally unfair to defendants who seek to accept responsibility and resolve criminal charges, would unduly chill negotiations between defendants and prosecutors, and would be contrary to well-accepted Georgia law.

OCGA § 24-4-410 expressly provides that, subject to certain exceptions not applicable here, admissions of guilt made in the context of withdrawn guilty pleas are inadmissible not only at trial but "in *any* judicial or administrative proceeding." (Emphasis supplied.) This rule of evidence applies in probation revocation and first offender resentencing proceedings. See *Grimes v. State*, 364 Ga. App. 518, 521 n. 3 (875 SE2d 500) (2022) ("Georgia Rules of Evidence apply in probation revocation hearings."). See also OCGA § 24-1-2 (b) ("The rules of evidence shall apply generally to all nonjury trials and other fact-finding proceedings" subject to certain exceptions not applicable here).

There is another reason why admissions made in connection with rejected guilty pleas should not be used against the defendant in a subsequent trial or other judicial proceeding. Specifically, in order to be admissible, confessions must be "made

voluntarily, without being induced by another by the slightest hope of benefit or remotest fear of injury." OCGA § 24-8-824. "The 'slightest hope of benefit' refers to promises related to reduced criminal punishment – a shorter sentence, lesser charges, or no charges at all." (Citation, punctuation and emphasis omitted.) *Henderson v. State*, 310 Ga. 708, 712 (2) (854 SE2d 523) (2021). Here, it is undisputed that Troupe's admission of guilt was made with the hope, and for the express purpose, of receiving a benefit in the form of reduced criminal punishment, i.e., the six year sentence agreed to by the parties. While the trial court was certainly authorized to reject the parties' agreement, it was not authorized to use Troupe's admissions made in connection with that agreement as the basis for resentencing.

We also reject the State's argument that its proffer made in connection with the rejected guilty plea supports the resentencing.

First, it is clear that the trial court did not resentence Troupe based on this proffer. Rather, as discussed above, the improper basis for the resentencing consisted of Troupe's admissions of guilt made in connection with the rejected and withdrawn plea agreement.

Second, the proffer upon which the State relies was not evidence submitted in connection with a hearing on the merits of the State's petition to resentence Troupe in the first offender case. Rather, it was simply the State's recitation of the factual basis for the guilty plea on the new charges, as was required by Uniform Superior Court Rule 33.9. See *State v. Evans*, 265 Ga. 332, 333 (454 SE2d 468) (1995). While Troupe did not object to the stated factual basis for the plea, there was no reason for him to do so. His interests mirrored the State's interest in obtaining court approval of the proposed plea agreement.

Third, even if, for the sake of argument, we were to consider the State's factual basis for the guilty plea as evidence in the first offender resentencing case, the record plainly shows that the trial court never conducted a full hearing in that matter. Troupe was not given the opportunity to testify or present evidence in the first offender case, and he never consented to the revocation of any portion of his probation outside the terms of his negotiated agreement with the State. Absent an admissible admission of a probation violation or a full hearing with evidence of such a violation, the trial court was not permitted to revoke Troupe's probation or adjudicate him guilty and resentence him in the first offender case. See OCGA § 42-8-34.1 (b) (a court may not

"revoke any part of any probated or suspended sentence unless the defendant admits the violation as alleged or unless the evidence produced at the revocation hearing establishes by a preponderance of the evidence the violation or violations alleged"); *Evans v. State*, 185 Ga. App. 805, 805 (355 SE2d 165) (1988) (applying same evidentiary standard in first offender termination and resentencing case as that standard used in other probation revocation proceedings).

For these reasons, the State's reliance on the proffer made by the State in connection with the rejected guilty plea is misplaced, and the trial court's resentencing order is reversed. See *Meadows*, 274 Ga. at 862 (3).

*Judgment reversed. Miller, P. J., and Markle, J., concur.*