**FOURTH DIVISION**
**DILLARD, P. J.,**
**BROWN and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**November 18, 2024**

# In the Court of Appeals of Georgia

A24A1757. GREATHOUSE v. THE STATE.

PADGETT, Judge.

Jody Len Greathouse ("Greathouse") appeals from the denial of his motion to vacate the order of arrest/incarceration and to modify the order revoking the balance of his probation. After the trial court denied the motion, Greathouse filed an application for discretionary appeal, which was granted. For the reasons set forth below, we vacate and remand the case for further proceedings consistent with this opinion.

On October 26, 2022, Greathouse pleaded guilty to one count of possessing less than two grams of methamphetamine and one count of possessing a drug-related object, and he was sentenced to three years' probation under the First Offender Act,

OCGA § 42-8-60 et seq. His probation conditions included the obligation to pay a fine, and, if directed by the probation officer, to complete a "residential or nonresidential program for substance abuse or mental health treatment" and/or to "agree to the imposition of graduated sanctions as defined by law."

On April 17, 2023, an arrest warrant was issued which alleged that Greathouse failed to attend "field matrix for his substance abuse assessment" which had been scheduled to occur on March 28, 2023. On May 8, 2023, a consent order of revocation was issued which included stipulations that Greathouse failed to make payments on his fine obligations and failed to obtain a substance abuse evaluation and comply with the recommended course of treatment. The consent order revoked Greathouse's probation but also reinstated terms of his probated sentence with certain modifications.[1] The consent order also included a provision that future violations of the special conditions of probation "authorize the Court to revoke the probation and

---

[1] The May 8, 2023 consent order retained all of the conditions of probation that were originally a part of the sentence but included provisions requiring Greathouse to report to the community supervision officer within 24 hours of his release from custody, obtain a substance abuse evaluation from a specific provider within 14 days of his release from custody, and make a payment on his fine obligations within 30 days of his release from custody, and imposing the provisions of the Probation Management Act Sentencing Options System with a sanctions cap of the probation detention center and/or the regional substance abuse treatment facility ("RSAT").

require the Defendant to serve up to the balance of his sentence in confinement pursuant to OCGA § 42-8-34.1." The record also includes a signed "waiver of petition and right to an attorney" in which Greathouse waived his right to have a written probation revocation petition filed, his right to a hearing on the probation revocation, and his right to have retained or appointed counsel represent him in the probation revocation matter.

On June 28, 2023, another arrest warrant was issued which alleged that Greathouse had failed to "avoid injurious and vicious habits" and failed to complete substance abuse treatment. On August 14, 2023, the trial court entered another consent order of revocation which was signed by Greathouse. In that August 14, 2023 consent order, Greathouse acknowledged that he violated special conditions of probation by either testing positive for or admitting use of methamphetamine on four different occasions in June 2023, by being discharged from outpatient substance abuse treatment on June 27, 2023, due to his methamphetamine use and failure to attend classes, and by failing to make any payments on his fine. The trial court again revoked the probated sentence originally imposed but then reinstated the terms of the

probation with certain modifications.[2] The order included the same language that appeared in the May 8, 2023 order relating to potential full revocation of probation for future violations as authorized under OCGA § 42-8-34.1. The August 14, 2023 order also again included Greathouse's signed waiver of his right to have a written revocation petition filed, right to a probation revocation hearing and right to counsel.

The August 14, 2023 order was modified on August 16, 2023 based upon a finding by the trial court that Greathouse had suffered a sudden personal loss in his family. The trial court allowed Greathouse to be released from custody but required that he be fitted with a GPS ankle monitor and report to an approved inpatient program or to RSAT within a specific amount of time and remain on the ankle monitor until entry into the program.

Another arrest warrant was issued for Greathouse on November 20, 2023, which alleged that Greathouse left the inpatient treatment facility and had paid no

---

[2] The August 14, 2023 consent order retained all of the conditions of probation that were originally a part of the sentence but included provisions requiring Greathouse to enroll and be accepted into a nine-month inpatient substance abuse program within 30 days of the date of the order, provide proof to his probation officer, remain in custody pending entrance into the program, successfully complete the program, report to the community supervision office within 24 hours of his release from the program, and abide by a curfew.

portion of his fine obligation. On December 4, 2023, yet another consent order of revocation was entered, finding that Greathouse had violated the terms of his probation by being discharged from an inpatient treatment facility after leaving the program without notifying staff and not paying any portion of his fine obligation. Greathouse was ordered to serve the balance of his sentence in the Department of Corrections, but that sentence was suspended upon successful completion of an approved nine-month inpatient substance abuse program. The order provided that the period of incarceration would be vacated if Greathouse completed the treatment program and any aftercare component of the program. The December 4, 2023 order also included this provision:

> The Defendant specifically waives any constitutional or statutory right to a probation revocation hearing based upon any subsequent violation of this provision. In the event that a court of competent jurisdiction finds probable cause, upon oath, affirmation, or sworn affidavit, that the defendant has failed to successfully complete said program, then the defendant's ongoing participation in such program shall be terminated immediately and, upon arrest of the defendant for such violation by any law enforcement officer, the defendant shall be returned to confinement at the county jail or other facility from which the defendant was released and the provision to serve the balance of 2022SUCR140 in the Georgia Department of Corrections of said sentence shall be enforced.

The December 4, 2023 order also obligated Greathouse to avoid using any illegal drugs or alcohol and contained other related provisions. Once again, Greathouse signed the order and a waiver of his right to have a written probation revocation petition filed, his right to a hearing, and his right to counsel.

On April 3, 2024, an order of arrest was entered based upon the affidavit of a community supervision officer which alleged that Greathouse left the Teen Challenge program in Chattanooga, Tennessee without permission, failed to successfully complete the program and failed to make any payments toward his fine obligation. On April 18, 2024, Greathouse filed a motion to vacate the order of arrest and to modify the sentence on revocation of probation. The trial court set a hearing on the motion within one week of it being filed and ordered that Greathouse not be transferred to the custody of the Department of Corrections until such time as the motion could be heard. A hearing was conducted on Greathouse's motion on April 25, 2024, and the motion was denied.

1. "As a general rule, '[t]his court will not interfere with a [probation] revocation unless there has been a manifest abuse of discretion on the part of the trial court.'" *Troupe v. State*, 372 Ga. App. 16, 18 (903 SE2d 721) (2024) (citation

omitted). Any revocation of probation involves the loss of liberty, which is a serious deprivation. *Meadows v. Settles*, 274 Ga. 858, 860 (3) (561 SE2d 105) (2002). Therefore, probationers, including those sentenced under the First Offender Act, are entitled to due process of law. *Troupe*, 372 Ga. App. at 18; *Meadows*, 274 Ga. at 860 (3). "The requirements of due process are flexible and call for such procedural protections as the particular situation demands." *Dave v. State*, 365 Ga. App. 1, 5 (3) (876 SE2d 882) (2022) (citation and punctuation omitted). Our review of whether a probation revocation proceeding afforded the defendant due process is conducted de novo. Id.

"A court may not revoke any part of any probated or suspended sentence unless the defendant admits the violation as alleged or unless the evidence produced at the revocation hearing establishes by a preponderance of the evidence the violation or violations alleged." OCGA § 42-8-34.1 (b). "If there is no constitutional, statutory, or public policy prohibition against waiver, an accused may validly waive any right." *Thomas v. State*, 260 Ga. 262, 263 (392 SE2d 520) (1990).

This case presents a situation where, during the time he was on probation, Greathouse was facing a number of revocation hearings and prior to each hearing, he

waived his right to have a written petition to revoke his probation filed with the court, waived his right to a hearing on the alleged violation(s) and waived his right to counsel. Each waiver included a specific provision wherein Greathouse indicated that he had not been coerced or threatened into waiving his rights and that he waived his rights freely and voluntarily. As to the sanctions imposed for each of these violations, Greathouse signed the consent order, acknowledging the violations and accepting the sanctions imposed by the trial court.

In the December 4, 2023 order, the trial court revoked the balance of Greathouse's probation and ordered that the remainder of his sentence be served in the custody of the Georgia Department of Corrections. The trial court suspended that sentence to allow Greathouse one additional opportunity to avoid incarceration by successfully completing a residential inpatient treatment program. However, that December 4, 2023 order also included a provision that provided that Greathouse waived any *future* probation revocation hearing and that the suspension of the sentence would be revoked if the trial court found probable cause, upon oath, affirmation, or sworn affidavit, that he had failed to complete the program or otherwise violated the terms of his probation.

A community supervision officer then submitted an affidavit to the trial court alleging that Greathouse had failed to complete the inpatient program and, based upon that affidavit, the trial court ordered that Greathouse be placed in custody and that the provisions of the previously suspended sentence would be imposed. Greathouse had no opportunity to contest the validity of the sworn allegations or explain the circumstances surrounding his failure to successfully complete the inpatient treatment program.[3] While there is little doubt that a criminal defendant, even one serving a sentence under the First Offender Act, can waive most rights, due process demands that the probationer be afforded the opportunity to deny or explain the circumstances surrounding an alleged probation violation. See OCGA § 42-8-38 (b); see also *Rainwater v. State*, 127 Ga. App. 406, 407 (193 SE2d 889) (1972) (stating that due process requires that a probationer be given notice and a hearing before probation can be revoked). After being confronted with the evidence of an alleged violation, a probationer may choose to admit the violation and waive the right to contest the charges. However, OCGA § 42-8-34.1 (b) specifically provides that "[a] court may

---

[3] See *Grigg v. State*, 372 Ga. App. 96, 98 (1) (903 SE2d 787) (2024) (right to confront witnesses applicable to probation revocation hearings as a matter of due process).

9

not revoke any part of any probated or suspended sentence unless the defendant admits the violation as alleged or unless the evidence produced at the revocation hearing establishes by a preponderance of the evidence the violation or violations alleged." The statute anticipates the possibility that the probationer might elect to admit the violation but there is no provision for the waiver of the right to a future hearing on future alleged violations. In fact, the statute specifically provides that a trial court may not revoke a probated or suspended sentence unless the due process safeguards incorporated into the statute are satisfied. The trial court was not authorized to revoke any portion of Greathouse's probated or suspended sentence without either receiving an admission from Greathouse or receiving sufficient evidence at a revocation hearing proving the violation of the terms of the probated sentence. Therefore, we must vacate the trial court's order and remand for further proceedings consistent with this opinion.

2. Because it may arise upon remand, we will address Greathouse's other enumeration of error. Greathouse alleges that because the trial court imposed the graduated sanctions authorized under OCGA §§ 42-8-23 and 42-3-110 et seq. in the May 8, 2023 consent order, the trial court is somehow limited in the sanctions that

could be imposed for Greathouse's failure to comply with the terms of probation. That argument is wholly meritless. OCGA § 42-8-23 merely is a tool that allows the Department of Community Supervision ("DCS") to impose sanctions for violations of the terms of probation without the necessity of first seeking a revocation hearing. Any sanction imposed by DCS is appealable to the trial court and the trial court is fully authorized to conduct a de novo hearing. OCGA § 42-8-23 (f) (2). Lack of compliance with a graduated sanction imposed by DCS under the statute is a violation of probation. OCGA § 42-8-23 (d). Additionally, the statute specifically provides "[n]othing contained in this Code section shall alter the relationship between judges and officers prescribed in this article nor be construed as repealing any power given to any court of this state to place offenders on probation or to supervise offenders." OCGA § 42-8-23 (g). Trial courts retain the authority to modify the probated sentence of a probationer at any time during the period of probation. OCGA § 42-8-34 (g). The trial court made successful completion of an inpatient rehabilitation program a special condition of the suspension of the sentence in the December 2023 order. Therefore, the provisions of OCGA § 42-8-34.1 (e) would be applicable and the trial

11

court's options upon remand are not limited due to its earlier invocation of graduated sanctions under OCGA § 42-8-23.

*Judgment vacated and case remanded. Dillard, P. J., and Brown, J., concur.*